UNITED STATES, Appellee

v

BOBBY J. ELLIS, Specialist Four, U. S. Army, Appellant

15 USCMA 8, 34 CMR 454

*Captain J. Philip Johnson* argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph L. Chalk* and *Captain Charles W. Schiesser.*

*Captain Barrie G. Sullivan, II,* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Francis M. Cooper.*

## Opinion of the Court

FERGUSON, Judge:

Arraigned and tried before a general court-martial convened by the Commanding Officer, Fort George G. Meade, Maryland, the accused entered a plea of guilty to a charge of desertion, in violation of Uniform Code of Military Justice, Article 85, 10 USC § 885, and persisted in that plea after a careful examination into its providency. He was found guilty and sentenced to dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for one year. Pursuant to a pretrial agreement whereby the guilty plea was entered, the convening authority approved only so much of the sentence as provided for bad-conduct discharge, forfeiture of all pay and allowances, and confinement at hard labor for six months. We granted accused's petition for review upon the contention that the law officer's instructions on the sentence were prejudicially erroneous.[1]

Following the introduction of evidence in extenuation and mitigation and arguments by the parties to the trial concerning the extent of the penalty which should be imposed, the law officer—over defense objection—advised the court members as follows:

"The sentencing of a convicted offender demands of each court member the best that he has in wisdom, knowledge, and insight, both as an officer and a citizen. Difficult as it is to do, he must weigh in the balance the future course of life of the individual before him with his judicial responsibility for the protection of the military community. The Code and the Manual set forth the nature of the punishment which the law will permit. But punishment—any penalty or loss inflicted on a person because of a crime—is the means, not the end of military justice. A sentence, that is, a punishment, has two general objectives, deterrence and, especially in modern times, rehabilitation. Each of these is conceived as a preventive of further offenses. You will have to solve the problems and resolve the conflicts, if any, arising out of the interests of the offender and the military community.

"This purpose is not easy to accomplish. *As you no doubt know,*

---

[1] Following our grant of review, the unexecuted portion of accused's sentence was suspended, with a view to his restoration to duty upon completion of a military retraining program. Letter, Department of the Army, Subject: Restoration to Duty of Adjudged Prisoner, dated April 20, 1964.

*in the civilian Federal courts, sentence is imposed by the judge. Almost without exception, the judge, prior to imposing sentence, is provided with the results of a presentence investigation. This is a thorough study which gathers, organizes, and analyzes the relevant data in the history of the defendant. Its purpose is to disclose to the judge both the favorable and unfavorable influences at work in the accused's person and to show all the circumstances in order that the choice of sentence may be as wise and enlightened as the predictability of human nature permits.*

*"The court-martial system and the requirements of military organization and operations normally do not permit you members to acquire the extensive information available to the judge, although you, as he, are considering the question of sentence in the first instance.* You do have before you the matters presented by the defense and the information produced by the prosecution. For the most part, these relate to the accused's past, both immediate and distant, but, at best, they are limited in scope and coverage, and they by no means represent the depth of information which modern studies in the behavioral sciences lead us to believe we should know about persons brought to the point of sentencing at the bar of justice. *Of necessity, you are unable to take into account the accused's future actions and course of conduct from this point forward; yet they too have a decided bearing on the extent of punishment which should be exacted from him by society.*

"When the Federal judge has under consideration placing an offender in confinement, techniques, in addition to those of the presentence investigation, are available to him. One of the most modern and effective is the authority, when the judge desires more detailed information, to commit the offender to the custody of the Attorney General for a period during which a complete study of the individual is made. The scope of the report is unlimited but it may include data regarding the defendant's previous conduct, the conditions of his social background, his capabilities, his mental and physical health, and other pertinent details. *This particular type of study is not available to you, although in the court-martial system it may be developed later should a sentence be imposed which includes confinement.*

*"This bring up an interesting comparison.* Usually the civilian judge is limited to a choice of four dispositions or a combination of them: Probation, imprisonment or commitment to an institution, fine, and suspended sentence. The court-martial, on the other hand, has a wider choice from among a variety of punishments. The options available include, either alone or in combination: punitive discharge; confinement; restriction; hard labor without confinement; reduction in grade; partial or total forfeitures; fines, in certain cases; fine with a provision for confinement until the fine is paid; detention of pay; reprimand.

"In exercising your discretion in determining the sentence, you should consider all the facts and circumstances of the case to the extent known to you.

"First, the offense. You should be concerned with the significant factors basic to its nature and circumstances; second, the offender. What sort of life he has experienced; what his attitudes are; to what extent he is aware of his situation; what meaning it has for him; his education, age, family background and relationships, social adjustment, marital status, previous record, attitude, personality traits, physical, emotional and mental condition; third, the military community. Its history and tradition; its attitude towards offenses and offenders, which will depend to a large degree upon the nature and circumstances of the offense; the

background of the offender; the volume of criminality; the atmosphere of security or of fear or prejudice.

"You should take into account: All matters in extenuation and mitigation as well as those in aggravation, whether introduced before or after the findings; matters before you respecting the reputation or record of the accused in the service for good conduct, efficiency, fidelity, or other traits which characterize a good soldier; his prior honorable discharges.

"A plea of guilty is a matter in mitigation which should also be considered. In that phase of the case prior to findings time, effort and expense to the government usually are saved by a plea of guilty. Such a plea also may be a manifestation of repentance and a first step toward rehabilitation.

"In addition to the other factors I have mentioned, you are entitled to take into account the nature and duration of the pretrial confinement.

"*The quality and quantity of punishment to be imposed upon this accused for the offense of which he stands convicted is a matter of broad concern in the Army, and many minds as well as many forces are brought to bear upon the question. The law gives to this court-martial certain powers in connection with punishment of the accused and vests other powers in the convening authority, higher appellate courts, and other agencies of the government. Some of these officials have powers greater than are given the court-martial; some, lesser. The result is a combined action culminating in an indeterminate sentence, the highest limits of which are fixed by the sentence you adjudge. The final outcome is not definite and clear until a time in the future. Meanwhile, however, the punishment will be studied and your sentence evaluated; it may be approved and affirmed; it may be ordered executed or suspended; it may be modified or ameliorative action may be taken by some* or all of the officials and agencies mentioned. If you think something should be done by these officials or agencies which is not within your powers, you may recommend it so long as your recommendation is consistent with, and does not cast doubt upon, what you intended to do within your powers.*

"*All these things may be considered by you in determining the sentence to be adjudged.* I emphasize, however, that you must use your own judgment, based on your own experience and knowledge. You must not take this discussion of the responsibility facing you as an indication that you should impose a maximum sentence. You must not adjudge an excessive sentence in reliance upon the possible mitigating action by the convening or higher authority. Above all, my instructions must not be interpreted as indicating any opinion as to the kind or amount of punishment which should be adjudged, for you and you alone are responsible for determining an appropriate sentence in this phase of the case.

"The maximum permissible sentence which may be adjudged in this case is a dishonorable discharge, total forfeitures, confinement at hard labor not to exceed three years, and reduction to the lowest enlisted grade." [Emphasis supplied.]

Regardless of the motivation of the law officer in delivering such instructions to the court-martial, they are at variance with the manner in which proceedings under the Uniform Code should properly be conducted. One of the principal criticisms of the administration of military justice under prior enactments of the Congress was the tendency to cause judicial bodies to adjudge known excessive sentences in reliance upon the mitigating authority of the officer convening the court-martial. Report of War Department Advisory Committee on Military Justice, pages 7, 8 (1946). This abandonment of a court's discretion to the reviewing authorities was then im-

proper and is now specifically condemned by the Manual for Courts-Martial, United States, 1951:

". . . Courts will . . . exercise their own discretion, and will not adjudge sentences known to be excessive in reliance upon the mitigating action of the convening or higher authority." [Manual, supra, paragraph 76a(4).]

This is no mere platitude which may be violated at will by the experimentation of a military judge. In United States v Cavallaro, 3 USCMA 653, 14 CMR 71, we long ago noted the express duty of all persons "who have any responsibility in fixing, affirming, or reviewing sentences" to "meet their responsibility by adjudging or affirming a fair and just sentence without regard to any further reductive action that might be taken by others who will subsequently act on the record." United States v Cavallaro, supra, at page 656. We repeated that injunction in United States v Kaylor, 10 USCMA 139, 27 CMR 213, and Judge Latimer, concurring in United States v Simpson, 10 USCMA 229, 27 CMR 303, noted again that " 'The time is long past when military courts should give an excessive sentence in reliance on higher headquarters adjusting the inequities.' "

We have no doubt that the law officer's instructions, set out above, tend to effectuate an abandonment by the court of its responsibility to adjudge what it considered to be an appropriate sentence to those in authority over it who might have available to them fuller information concerning the possible rehabilitation of the accused or other factors properly bearing on the determination of a penalty fitting both him and the crime to which he pleaded guilty. We are not deterred in reaching this conclusion by the Government's contention that the law officer, in the body of his instructions, expressly adverted to the responsibility of the court members and enjoined each to use his own judgment in the premises. Such a passing reference to their duty, considered in light of a lengthy invitation to follow the contrary course, is comparable to King Canute's command that the tide recede. Instructions must be viewed in context and, so taken, there is little chance that the law officer's belated injunction was effective to overcome his earlier comments.

Moreover, we point out that considerations of possible probation and parole play no part in deliberations by a sentencing body upon an appropriate penalty. Thompson v State, 203 Ga 416, 47 SE2d 54 (1948); State v Conner, 241 NC 468, 85 SE2d 584 (1955); Jones v Commonwealth, 194 Va 273, 72 SE2d 693 (1952). As was noted in Commonwealth v Johnson, 368 Pa 139, 81 A2d 569 (1951), at page 573:

". . . The statement made by the learned trial judge, although true, of course, in fact, was highly prejudicial to the defendant. It was the jury's duty to impose the penalty which they thought appropriate in view of the nature of the crime and the character of the defendant as revealed by his previous record and their impressions of him at the trial, and they had no right, apart from such relevant considerations, to speculate as to whether the Board of Pardons might at a future time, wisely or unwisely, exercise some form of clemency."

In sum, then, we are convinced that the instructions of the law officer, considered as a whole, were erroneous. In light of their nature, the accused's background, and the other circumstances of the case, there is a fair risk that they influenced the court-martial in the adjudication of the penalty which it returned. The fact that the sentence was, pursuant to a pretrial agreement, afterwards reduced by the convening authority is of no consequence here. Indeed, permitting the purging of prejudice by reason of that arrangement would be to condone the vice which we find in the instructions involved, i.e., the abdication by the court of its responsibility to adjudge an appropriate sentence to the exercise of mitigating authority by the convening authority. And see United States v Johnson, 14 USCMA

548, 34 CMR 328. The error was, therefore, prejudicial, and reversal is necessitated.

The decision of the board of review is reversed and the record of trial is returned to The Judge Advocate General of the Army. A rehearing on the sentence may be ordered.

Chief Judge QUINN and Judge KILDAY concur.