UNITED STATES, Appellee,

v.

Private First Class Richard R. WHEEL-
ER, SSN 291–62–3061, United States
Army, Appellant.

CM 443811.

U.S. Army Court of Military Review.

20 Aug. 1984.

Captain Donna Chapin Maizel, JAGC, ar-
gued the cause for the appellant. With her
on the brief were Lieutenant Colonel Wil-
liam P. Heaston, JAGC, and Major Edwin
D. Selby, JAGC.

Captain Debbie J. O'Bryan, JAGC, ar-
gued the cause for the appellee. With her
on the brief were Colonel James Kucera,
JAGC, Captain Thomas E. Booth, JAGC,
and Major David E. Wilson, JAGC, USAR.

Before McKAY, PAULEY and WER-
NER, Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Judge:

Contrary to his pleas, appellant was con-
victed by a court-martial with members of
raping a woman in August 1982 and of
raping and sodomizing another woman one
month later in violation of Articles 120 and
125, Uniform Code of Military Justice, 10
U.S.C. §§ 920 and 925. The approved sen-
tence provides for a dishonorable dis-
charge, confinement at hard labor for life,
total forfeitures and reduction to Private
E–1.

Among the errors assigned by appellant
are: that his conviction was based upon an
involuntary confession unlawfully obtained
through psychological coercion; that the
military judge erred by improperly instruct-
ing the court members concerning the ap-
pellant's eligibility for parole; and that his
counsel was ineffective. We find each of
these contentions to be without merit.

## I. Voluntariness of the Confession

At 2230 hours, 7 August 1982, appellant abducted Miss Terri C. in her car while she was stopped for a traffic light on a street in Tacoma, Washington. For the next four hours, during which he drove around Tacoma and on Fort Lewis, Washington, appellant threatened and berated Miss C., forced her to undress and lie on the floor of the vehicle, locked her in the trunk of her car and twice raped her.

At 0300 hours, 9 September 1982, the appellant employed a similar *modus operandi* to abduct, rape and sodomize Miss Grace N.. This incident lasted for about two and one-half hours and also occurred in Tacoma and on Fort Lewis. On 15 September 1982, after having been identified as the principal suspect in the second incident, appellant was taken into custody for questioning by military and civilian criminal investigators. Before interrogating him, both investigators advised appellant of his rights to remain silent and to obtain counsel, which appellant waived. Initially denying that he committed the offenses against Miss N., appellant eventually admitted to Special Agent Herring of the Fort Lewis Criminal Investigation Division that he was the perpetrator.

Special Agent Herring testified that he did not unlawfully coerce appellant into confessing, but that:

> I basically appealed to his conscience, and told him that I didn't believe his stories that he'd been giving us up until then and he, at first, denied any involvement and then he said that he'd been praying to God alot about his problem, and that was the first kind of admission that he gave to me at all.
>
> Q. What did he say?
>
> A. He said that—his exact words were, "I've been praying to God a lot about my problem," without saying what the problem was. I understood it to be his crime. And, at that point I said, "Yes, I know that you have a problem, and you know that you have a problem and God knows that you have a problem." Tears welded [sic] in his eyes, and he continued saying

things to the effect that he'd been praying a lot about it, and I said, "Would you be willing to pray to God right now to give you the strength to go ahead and get this off your chest and start living your life and turning your life around?" I got down on my knees with him and he was crying there, and he turned his head upward and said, "I didn't mean to do it. I didn't mean to attack those women, God, I need help and strength." And that lasted 30 seconds or so. We got back in our chairs and he drew his strength back up again and stopped crying, and looked at me and said, "You're right. What you said was true. I did do it."

■ Appellant, on the other hand, characterizes Agent Herring's interrogation technique as psychological coercion. Appellant argues that his confession was involuntary since Herring only obtained it after inducing him to seek divine forgiveness, thereby capitalizing on his religious beliefs. *See* Military Rule of Evidence 304(c)(3). We disagree. In the first place, the discussion of religion was initiated by the appellant—not Agent Herring. Furthermore, an examination of the context in which the discussion occurred supports the conclusion that appellant was attempting to unburden himself of guilt, and was not bowing under the pressures of police interrogation. Under the circumstances, we are convinced, as was the trial judge who had the opportunity to observe the interrogator's demeanor while testifying, that appellant was not unlawfully coerced into confessing. *See United States v. Schneider*, 14 M.J. 189, 195 (C.M.A.1982); *United States v. Schuring*, 16 M.J. 664, 669 (A.C. M.R.1983).

## II. Instructions Concerning Parole Eligibility

■ Appellant contends that the military judge erred when, in response to a court member's question concerning eligibility for parole, he stated:

> All right. First of all, parole is available to an accused who is serving confine-

ment, including life imprisonment. And it varies upon the length of the sentence. Of course, that's only for those eligible for consideration of parole. It also depends upon the conduct of the accused, so, I can't, and I won't give you a direct answer. I'm not going to tell that parole is available in x period of time. Because I can't tell you what the conduct of the accused is going to be. Parole is available to an accused sentenced by a military court including life imprisonment. You should determine, in terms of confinement, what you feel is appropriate for this accused. Under these circumstances, don't be concerned about the impact of parole. Just realize that it is available, in every single case, including a sentence to life. When selecting an appropriate sentence, you should select a sentence which will best serve the end of good order and discipline, the needs of the accused, and the welfare of society. I really don't think I can give you any more of a specific answer, Colonel A.. Any objections to the instructions I've just given?

Essentially, appellant's argument is that the military judge's instruction violated the holding of the Court of Military Appeals in *United States v. Ellis*, 15 U.S.C.M.A. 8, 34 C.M.R. 454 (1964). We disagree. In *Ellis*, a law officer's presentencing instructions were condemned because they adjured the court members to take into account possible mitigating action by convening and other appellate authorities in arriving at an appropriate sentence. Besides tending to result in harsher punishments, the instructions violated paragraph 76(a)(4) of the Manual for Courts-Martial, United States, 1951, which provided that: "... Courts will ... exercise their own discretion, and will not adjudge sentences known to be excessive in reliance upon the mitigating action of the convening or higher authority."

The instruction in this case is easily distinguishable and therefore compels a different result. Instead of advising the court members to consider the possibility of parole in arriving at a sentence, the military judge expressly stated that they should not "be concerned about [its] impact." Any ambiguity as to the meaning of this language is readily dispelled by examining it in the context in which it was spoken. The fact that the trial defense counsel neither objected to the language nor requested supplementary *voir dire* is also evidence of its clarity and harmlessness. "Normally, failure to make a timely objection where harmful affects [sic] can be ameliorated by prompt instructions, raises the doctrine of waiver." *United States v. Kiddo*, 16 M.J. 775, 776 (A.C.M.R.1983), *pet. denied* 18 M.J. 5 (C.M.A.1984). Our decision need not rest on that ground, however, since we are satisfied that the judge's instruction was not improper. *See Kiddo;* *United States v. Cain*, 5 M.J. 844, 848–49 (A.C.M.R.1978).

### III. Effectiveness of Counsel

Finally, we disagree with appellant's contention that he was denied effective assistance of counsel at trial. We recently enumerated the criteria for resolving issues of this kind in *United States v. Bowie*, 17 M.J. 821, 823–24 (A.C.M.R.1984):

> To prevail on a claim of ineffective assistance of counsel, an appellant must first prove that his attorney failed to perform with the degree of skill and diligence with which a competent attorney would perform under similar circumstances. Secondly, the appellant must establish that he was materially prejudiced in the defense of his case by his counsel's incompetence. (Citations omitted.)

Since our decision in *Bowie*, the Supreme Court held in *Strickland v. Washington*, —— U.S. ——, ——, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 680 (1984), that before a conviction will be reversed on the grounds of ineffective assistance of counsel, the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

Appellant argues that his attorney was ineffective in that he did not adequately prepare for either the merits or the sentencing portion of the trial. It appears from the record, however, that appellant's dissatisfaction with his attorney was misplaced. It is more likely that he was unhappy about the strength of the case against him, something over which his attorney had no control. *See United States v. Hancock,* 49 C.M.R. 830, 831 (A.C.M.R. 1975); *United States v. Zuis,* 49 C.M.R. 150, 154 (A.C.M.R.1974). First of all, appellant had admitted to a police investigator that he was the perpetrator of several of the violent crimes for which he stood trial. Extrinsic evidence corroborated that confession. Second, in a psychiatric evaluation, he had been diagnosed as being afflicted with a type of personality disorder that rarely responds to treatment. Third, he could only provide his attorney with names of character witnesses whose testimony was unlikely to help him during the extenuation and mitigation portion of the trial. The affidavits appellant submits in support of his contention do not show that defense counsel performed his duties with a lack of skill or diligence and there is absolutely no evidence that appellant's counsel committed errors so egregious as to cause his client to be unfairly convicted. Since appellant has not shown that his attorney performed incompetently, we can not find that he was denied effective assistance of counsel at trial. *See United States v. Bigger,* 2 U.S.C.M.A. 297, 301, 8 C.M.R. 97, 101 (1953).

As a final matter, we find the sentence to confinement for life wholly appropriate in this case. We reject appellant's assertion that his punishment is excessive because his victims did not suffer permanent physical injury from the rapes. In just one month, in a detached and calculated manner, appellant kidnapped, brutalized and violently raped or sodomized two different women. The Fort Lewis military community, "through the voice of the court members, has expressed its 'moral outrage' at appellant's crimes." *United States v. Hutchinson,* 15 M.J. 1056, 1068 (N.M.C.M.

R.1983). We agree with their sentence. Appellant's reprehensible conduct can not be tolerated in a civilized society.

The findings of guilty and the sentence are affirmed.

Senior Judge McKAY and Judge PAULEY concur.