**UNITED STATES, Appellee,**

v.

**Sergeant First Class Paul V. BRAMEL, 268–50–5123, United States Army, Appellant.**

**ACMR 8701207.**

U.S. Army Court of Military Review.

5 Jan. 1990.

---

For Appellant: William J. Holmes, Esquire (argued); Lieutenant Colonel Russell S. Estey, JAGC, Major Kathleen A. VanderBoom, JAGC, Captain Donna L. Wilkins, JAGC, Captain Jeannine C. Hinman, JAGC (on brief).

For Appellee: Captain Maria C. Fernandez, JAGC (argued); Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Daniel J. Dell'Orto, JAGC, Captain Amaury R. Colon, JAGC (on brief).

Before DeFORD, KANE, and WERNER, Appellate Military Judges.

## OPINION OF THE COURT ON REMAND

WERNER, Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial composed of officer and enlisted members of forcible sodomy on a child under the age of sixteen years on various occasions during a two-year period, in violation of Article 125 of the Uniform Code of Military Justice, 10 U.S.C. § 925 (1982) [hereinafter UCMJ].[1] His approved sentence included a dishonorable discharge, confinement for twenty years and reduction to the grade of Private E1.

On 22 February 1989, this court affirmed the findings of guilty and the sentence. *United States v. Bramel*, 28 M.J. 505 (A.C. M.R.1989). The appellant then petitioned the Court of Military Appeals for grant of review and subsequently filed a supplemental brief to his petition. The Government responded by moving that the case be remanded to this court to resolve certain contested factual questions and legal issues that had not been previously raised. Instead of remanding the case for further proceedings to consider the newly asserted matters, the Court of Military Appeals set aside and vacated our earlier decision. *United States v. Bramel*, 29 M.J. 295 (C.M. A.1989) (summary disposition). We have re-examined the issues previously raised by appellant as well as the matters raised for the first time.[2] For the reasons set forth

---

1. The child, appellant's stepson, was born in October 1981; the incidents specified in the charges occurred between March 1984 and April 1986; the Article 32 hearings took place on 2 and 3 March 1987; appellant was tried in April and May 1987.

2. We are somewhat perplexed by the Government's reason for officiously moving to permit

below, we hold that appellant's allegations of error and arguments thereon are without merit.

## I

## A

After receiving the charges against the appellant and ordering an investigation pursuant to Article 32, UCMJ, Colonel (COL) Ruggiero, the summary court-martial convening authority, provided the investigating officer with the following special instructions relative to taking the child victim's testimony:

1. You are provided with the following additional instructions pertaining to the subject investigation. These instructions relate only to the testimony, if any, of Christopher [R].

a. During the testimony of this witness, you will insure that a partition is placed between the witness and the accused. The partition will be placed so that the accused can hear the witness' testimony, but the witness cannot see the accused. All parties will be instructed not to call the attention of the witness to the presence of the accused. Defense counsel will have an unobstructed view of the witness at all times, and will be allowed to consult freely with the accused at any time, in such a manner as not to reveal to the witness the accused's presence.

b. The witness will be permitted to have present during his testimony an adult person of his choosing (e.g., mother, adult relative, social worker or family friend) as a "morale supporter." This adult will be permitted to sit next to the witness during his testimony, but will be instructed by you not to prompt the witness or otherwise interfere with the giving of testimony.

c. You will insure that the testimony of this witness is transcribed verbatim, and a copy of the transcript incorporated in the record of the hearing in lieu of summarized testimony. You will contact the Chief, Criminal Law, Office of the Staff Judge Advocate, to obtain a court reporter for this purpose.

2. I direct that your entire investigation, including the testimony of Christopher [R] be closed to the public.

3. The government may be represented at the investigation by one or more counsel designated for that purpose by the Chief, Criminal Law, Office of the Staff Judge Advocate.

4. You are advised that these instructions are provided solely to insure that a full, fair and impartial investigation of the charges is conducted in this case. You should not draw any inference regarding the possible guilt or innocence of the accused, or the proper disposition of the charges referred to you for investigation, based upon these instructions.

Captain (CPT) Chabot, COL Ruggiero's legal advisor and the Government's legal representative at the Article 32 investigation, testified that she prepared a letter for his signature containing the aforementioned special instructions after learning from the child's mother that he would not testify in the presence of the appellant. It was the mother's opinion that the child was afraid of men in general and of the appel-

appellant a second appeal before this court. In responding to appellant's petition before the Court of Military Appeals, the Government asserted that there were unresolved factual questions requiring resolution by the exercise of this court's fact-finding power. However, when appellate government counsel were asked to identify those questions so we could address them, they were unable to do so in either their brief or oral argument. To the contrary, the Government specifically requested that we defer to the "findings of fact made by the trial judge who heard the testimony, questioned the witnesses and observed their demeanor." Moreover, the "newly asserted" issues which we are about to

address were raised at trial and were known to appellant's original appellate counsel. Yet, they were not raised when this case first came before this court. Senior Judge DeFord has expressed his concern with the "disservice such practice works on our otherwise orderly appellate processes." *United States v. King,* 28 M.J. 855 (A.C. M.R.1989) (dissenting opinion). Apparently his concern has fallen on deaf ears, possibly because it was expressed in a dissenting opinion. We are therefore constrained to remind counsel that unnecessary piecemeal appellate litigation neither enhances the efficiency of the criminal justice system nor adds to the professionalism of counsel appearing before this court.

lant in particular due to the sexual abuse he had suffered. CPT Chabot did not attempt to corroborate this information with a professional examination and opinion. Instead, she obtained a copy of a letter that was used in an earlier pretrial investigation involving child abuse in which the Article 32 investigating officer was directed to employ a partition during the child's testimony. She then adapted it for use in this case and submitted it to COL Ruggiero who signed it without discussing its contents with her. Unbeknownst to CPT Chabot, the military judge at the court-martial had determined that the use of the partition during the pretrial investigation was improper.[3] Appellant's defense counsel did not complain to COL Ruggiero about the substance of the instructions or the procedure involved in their issuance.

The defense counsel did, however, file written objections to the use of the partition on substantive grounds before the investigating officer claiming, *inter alia,* that the partition prevented the appellant from confronting the child and hindered cross-examination. The investigating officer noted appellant's objections but nevertheless directed that the child testify from behind the partition, shielded from the appellant but in view of the appellant's defense counsel. After his objections were denied, appellant requested permission to act as his own attorney but only for the limited purpose of cross-examining the child. This request was also denied by the investigating officer. Throughout the hearing, the appellant was represented by both military and civilian counsel who conducted an extensive inquiry into the child's competence to testify and into the truth and veracity of the child's statements.

The defense counsel also argued that the procedure employed by CPT Chabot that induced COL Ruggiero to issue the special instructions denied the appellant a fair and impartial Article 32 investigation. The defense essentially asserted that CPT Chabot's advice to COL Ruggiero as to the legality of using a partition was improper in two respects: (1) it failed to advise the

colonel of the trial judge's ruling on this matter in another case and (2) it induced him to usurp the independence and discretion of the investigating officer and thereby amounted to a denial of appellant's presumption of innocence and resulted in unlawful command influence. The investigating officer rejected these objections as well.

## B

At trial, the appellant reasserted his pretrial objections and moved that the military judge order a new pretrial investigation pursuant to Article 32, UCMJ. The military judge made findings of fact that, although the use of the partition inconvenienced defense counsel, it did not materially interfere with counsel's ability to consult with the accused, to observe and hear the child's testimony, or to conduct effective cross-examination. The judge also found as a matter of law that the right to face-to-face confrontation at a pretrial investigation is not a "substantial" right requiring a new Article 32 investigation if violated. The military judge concluded that the use of the partition was not prejudicial to the accused.

The judge next rejected that portion of the appellant's motion concerning denial of the right to counsel, finding that the request for self-representation was "a ploy to defeat the use of the screen." Apparently, the judge found that appellant's request was neither timely nor sincere but was submitted in an effort to defeat the effect of the partition.

The military judge also determined that although CPT Chabot's advice to COL Ruggiero as to the legality of using a partition was error, her actions were unintentional and did not prejudice the appellant either by usurping his presumption of innocence or unlawfully influencing the investigating officer in conducting a fair and impartial investigation. The trial judge denied the motion.

The child subsequently testified at trial—without benefit of the partition—and was

---

**3.** The judge at that court-martial was eventually    detailed to the case at bar.

subjected to an extensive cross-examination by appellant's counsel. The appellant did not review his demand for self-representation but elected to continue with the services of the military counsel previously detailed and the civilian defense counsel he had previously hired.

## II

On appeal, the appellant contends that the military judge erred in denying his motion for a new pretrial investigation. His tripartite argument is premised on the right of confrontation as enunciated in *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988); the right of self-representation as reflected in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); and the doctrine of fundamental fairness.

## A

In *Coy v. Iowa*, the Court reviewed a factual situation similar to the one in the case at bar. The Supreme Court reversed and remanded Coy's conviction for sexually assaulting two 13–year–old girls, because the trial court, acting in accordance with an Iowa State statute, had permitted the two victims to testify behind a screen which enabled Coy "dimly to perceive the witnesses, but the witnesses to see him not at all." *Coy v. Iowa*, 108 S.Ct. at 2799. In reversing the conviction, the Court reaffirmed earlier decisions describing the "literal right to 'confront' the witness at the time of trial" as "forming the core" of the Confrontation Clause as including the right to physically face and cross-examine those who testify. *Coy v. Iowa*, 108 S.Ct. at 2801 (quoting *California v. Green*, 399 U.S. 149, 157, 90 S.Ct. 1930, 1934–35, 26 L.Ed.2d 489 (1970), and *Pennsylvania v. Ritchie*, 480 U.S. 39, 51, 107 S.Ct. 989, 998–99, 94 L.Ed.2d 40 (1987)). The Court emphasized the purpose underlying these guarantees, stating:

> The perception that confrontation is essential to fairness has persisted over the centuries because there is much truth to it. A witness "May feel quite differently when he has to repeat this story looking at the man whom he will harm greatly by distorting or mistaking the facts. He can now understand what sort of human being that man is." It is always more difficult to tell a lie about a person "to his face" than "behind his back." In the former context, even if the lie is told, it will often be told less convincingly. The Confrontation Clause does not, of course, compel the witness to fix his eyes upon the defendant; he may studiously look elsewhere, but the trier of fact will draw its own conclusions. Thus the right to face-to-face confrontation serves much the same purpose as a less explicit component of the Confrontation Clause that we have had more frequent occasion to discuss—the right to cross-examine the accuser; both "ensur[e] the integrity of the fact-finding process." The State can hardly gainsay the profound effect upon a witness of standing in the presence of the person the witness accuses, since that is the very phenomenon it relies upon to establish the potential "trauma" that allegedly justified the extraordinary procedure in the present case. That face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult. It is a truism that constitutional protections have costs.

*Coy v. Iowa*, 108 S.Ct. at 2802 (citations omitted).

■ However, the Court declined to go so far as to preclude all possibility of an exception to the right of face-to-face confrontation at trial. *Coy v. Iowa*, 108 S.Ct. at 2803. *See, e.g., State v. Vincent*, 159 Ariz. 418, 768 P.2d 150 (1989). Nevertheless, even were we to assume that the right of face-to-face confrontation at trial is absolute, the holding of *Coy v. Iowa* is inapplicable to the case at bar.

In *Coy v. Iowa*, the Court differentiated between the right of physical, face-to-face confrontation *at trial*, a "right narrowly and explicitly set forth in the Clause," and other confrontation "rights" which are only

implicit in the Confrontation Clause. *Coy v. Iowa,* 108 S.Ct. at 2802. The Court's opinion indicates that these latter rights are to be distinguished from the "irreducible literal meaning" of the Confrontation Clause: "a right to *meet face-to-face* all those who appear and give evidence *at trial.*" *Coy v. Iowa,* 108 S.Ct. at 2803 (emphasis added). *See also Barber v. Page,* 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968) ("The right to confrontation is basically a trial right"). Because these rights are only implied from the clause, they are not absolute and may "give way to other important interests." *Coy v. Iowa,* 108 S.Ct. at 2802. One of the implicit rights referred to by the Court was the "right to face-to-face confrontation at some point in the proceedings *other than the trial itself.*" *Coy v. Iowa,* 108 S.Ct. at 2802–803 (citing *Kentucky v. Stincer,* 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631, (1987) (emphasis added).[4] Obviously, the pretrial investigation provided for by Article 32, UCMJ, is neither a trial nor part of the *trial* proceedings. Therefore, the extent of any right to a face-to-face confrontation with witnesses at an Article 32 UCMJ, pretrial investigation must be measured by a standard other than that announced in *Coy v. Iowa.*

## B

In *Kentucky v. Stincer,* the Supreme Court considered a case where the defendant was denied the right of face-to-face confrontation at an in-chambers competency hearing. In *Stincer,* the Supreme Court concluded that the defendant was not denied the right of confrontation because he otherwise enjoyed the "opportunity for full and effective cross-examination at trial" and because of the nature of the hearing from which he was excluded. *Kentucky v. Stincer,* 482 U.S. at 746–47, 107 S.Ct. at 2667–68. These conclusions were premised on the fact that the witnesses were subject to the same scope of cross-examination at trial as at the competence hearing and on

the fact that the competency hearing was not a "crucial stage of the trial." *Kentucky v. Stincer,* 482 U.S. at 739–742, 744 n. 17, 107 S.Ct. at 2664–65, 2666 n. 17.

█ Applying this analysis to the case at bar, we note first that the primary function of the investigation is to obtain an impartial recommendation for disposition of the case and to provide the accused an opportunity for discovery. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 405, Discussion. *See United States v. Alford,* 8 M.J. 516 (A.C.M.R.1979). Although the Article 32, UCMJ, pretrial investigation is an important pretrial right, it is not a critical stage or crucial step in the trial. *Compare United States v. Chuculate,* 5 M.J. 143 (C.M.A. 1978), and *United States v. Mickel,* 26 C.M.R. 104, 107 (C.M.A.1958) ("if an accused is deprived of a substantial pretrial right on timely objection, he is entitled to judicial enforcement of his right, without regard to whether such enforcement will benefit him at the trial"), *with United States v. Schaffer,* 12 M.J. 425 (C.M.A. 1982) (the results of a pretrial investigation neither bind the convening authority nor delimit the evidence that later will be considered by the trier of fact), and *United States v. Samuels,* 27 C.M.R. 280 (C.M.A. 1959) (an Article 32 investigation is "a preliminary proceeding, not a trial on the merits"). *See also United States v. Nickerson,* 27 M.J. 30 (C.M.A.1988) (an accused may revoke a waiver of the pretrial investigation only upon a showing of good cause). To the contrary, it is a proceeding preliminary to trial. Moreover, an Article 32, UCMJ, investigation neither requires the investigating officer "to decide difficult legal questions" nor does it require him to adhere to the strict rules of evidence. *United States v. Samuels,* 27 C.M.R. at 287. Finally, the statute itself provides only for the right of cross-examination and does not provide for any right of confrontation. Article 32(b), UCMJ. Therefore, the

---

**4.** The other confrontation rights held by the Supreme Court to be implicit include the right of cross-examination and the right to exclude out-of-court, "hearsay" statements. *Coy v. Iowa,*

108 S.Ct. at 2802 (citing *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), and *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)).

Article 32, pretrial investigation, while an important right, is not the equivalent of a trial for purposes of the Confrontation Clause.

■ Second, the use of the partition in the case at bar neither deprived the defense counsel of appellant's assistance nor detracted from due process considerations attendant to the proceeding. *But see Kentucky v. Stincer,* 482 U.S. at 748, 107 S.Ct. at 2668–69 (Marshall, J. dissenting). The child was subjected to extensive cross-examination at both the pretrial investigation and at trial. Where an accused is neither excluded from any part of the pretrial proceeding nor compelled to face out-of-court statements from absent witnesses, his right of cross-examination is not abridged. Absent any evidence that appellant's cross-examination or ability to cross-examine the child at trial was impaired,[5] we cannot conclude that there was a violation of the appellant's right of cross-examination at trial. We find no evidence of record indicating that the appellant was in any way prejudiced. Accordingly, we find no violation of the accused's Sixth Amendment rights to confrontation or cross-examination.

### C

Military courts have consistently acknowledged that the statutory right of confrontation under Article 32 of the Code and its implementing provisions under the Manual for Courts–Martial "differs from the constitutional standard applicable to criminal trials." *United States v. Ledbetter,* 2 M.J. 37, 43 (C.M.A.1976). Neither Congress nor the President have expressly mandated face-to-face confrontations between witnesses and an accused at Article 32, UCMJ, investigations. The right of cross-examination provided for by statute is expressly limited to "available" witnesses. Article 32, UCMJ. The Manual likewise embraces this limitation. *See generally* Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 405 [hereinafter R.C.M.]. Moreover, the inves-

tigating officer has no subpoena power at all over civilians, *United States v. Chuculate, supra,* and the availability of military personnel is subject to a balancing test, *United States v. Ledbetter,* 2 M.J. 37 (C.M.A.1976). Thus, the statute is not intended to afford an absolute right of either confrontation or cross-examination. As neither Congress nor the President has expressly mandated face-to-face confrontation, we decline to adopt a broader interpretation of Article 32, UCMJ. The interest of society in shielding a child victim of sexual abuse from the trauma that may result from a face-to-face meeting with the accused has been held to outweigh the accused's right of confrontation at a noncrucial state of a criminal prosecution. *Kentucky v. Stincer, supra.* Accordingly, the appellant's complaint is without merit.

### III

Appellant's contention that he was improperly denied the right to represent himself at the Article 32 investigation is also without merit. The right of personal representation is of constitutional magnitude. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *United States v. Bowie,* 21 M.J. 453 (C.M.A.), *cert. denied,* 479 U.S. 820, 107 S.Ct. 83, 93 L.Ed.2d 37 (1986). *See* R.C.M. 506(d). The right of an accused to act as his own attorney during an Article 32 investigation is coextensive with the right at trial. Article 38(b), UCMJ, 10 U.S.C. § 838(b). However, this right is not absolute. Rule 506 also provides, "The right of the accused to conduct the defense personally may be revoked if the accused is disruptive or fails to follow basic rules of decorum and procedure." R.C.M. 506(d). This limitation was recognized by the Supreme Court in *Faretta v. California:*

> The right of self representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law.

---

**5.** For example, where the use of the partition influences a child witness' subsequent trial testi- mony or makes it more difficult for an accused to prepare for cross-examination.

*Faretta v. California,* 422 U.S. at 835, n. 46, 95 S.Ct. at 2541, n. 46.

■ We hold that the military judge properly exercised his discretion in denying appellant's motion for a new Article 32 investigation. The evidence of record clearly demonstrates that appellant's request to represent himself was not inspired by a genuine desire to present his case during the investigation. The appellant's request for self-representation was limited to the Article 32, UCMJ, investigation and there solely to the cross-examination of the child witness. Therefore, we agree with the trial judge's finding that appellant's request in this case was merely "a ploy" to avoid the effects of the investigating officer's decision to use the partition. The appellant's invocation of this right was an attempt to circumvent the procedural directive of the investigating officer and a tactical maneuver to prevent the child from testifying. Accordingly, the denial of appellant's motion was neither arbitrary, capricious nor inconsistent with fundamental fairness nor did it constitute an abuse of discretion. *Accord United States v. Cauley,* 697 F.2d 486, 491 (2d Cir.), *cert. denied,* 459 U.S. 1222, 103 S.Ct. 1230, 75 L.Ed.2d 464 (1983) (denial of defendant's motion to proceed *pro se* in the middle of cross-examination within the court's discretion). Requests for self-representation, like requests for individual counsel, should be made in good faith and not solely to vex the prosecution or the court. *Cf. United States v. Perry,* 14 M.J. 856 (A.C.M.R. 1982), *petition denied,* 16 M.J. 135 (C.M.A. 1983).

## IV

Appellant contends that the military judge erred in failing to grant his motion for a new Article 32 investigation on the grounds of fundamental fairness. Specifically, he alleges that there was prosecutorial misconduct by CPT Chabot which unlaw-fully usurped COL Ruggiero's discretionary authority in deciding to order use of the partition during the taking of the testimony of the child; and the special instructions issued by COL Ruggiero constituted unlawful command influence that vitiated the impartiality of the investigating officer.[6] We disagree.

■ We hold that CPT Chabot's advice to COL Ruggiero did not constitute prosecutorial misconduct. Appellant's assault upon the decision to order the investigating officer to employ the partition is premised upon two grounds: first, that it was influenced by "grossly negligent" misadvice and, second, that it emanated from a government representative.

Although the military judge found impropriety in CPT Chabot's failure to inform COL Ruggiero of his earlier proscriptive ruling on the use of a partition, we find her advice was not deficient. A trial judge's ruling of law in one case does not constitute binding precedent even for subsequent cases tried by that same judge. Knowledge of the judge's earlier ruling would therefore have been irrelevant to COL Ruggiero's decision ordering the investigating officer to use the partition. Furthermore, as we held previously in this opinion, the employment of a partition during the taking of testimony from a child witness at pretrial proceedings is not proscribed by the Constitution or the Uniform Code of Military Justice.

■ Nor do we find fault with the fact that COL Ruggiero received legal advice from the Government's representative at the Article 32 investigation. It is inherent in the military criminal justice system that officers serving as convening authorities who have little or no legal training are empowered to make legalistic decisions impacting on the rights of servicemembers accused of offenses under the Code. *See generally* R.C.M. 305, 306, 401, 403, 405,

---

6. He also alleges that CPT Chabot rendered *ex parte* legal advice to the Article 32 investigating officer in violation of the principle of law enunciated in *United States v. Payne,* 3 M.J. 354 (C.M.A.1977). The evidence of record establishes however, that CPT Chabot's communications with the investigating officer were neither *ex parte* nor advisory and were not improper. Unlike the facts in *Payne,* the investigating officer here obtained legal advice from a judge advocate who was not involved in the prosecution of the case.

601 and 604. The practice of obtaining legal guidance from judge advocates or legal officers is not only permitted by the Code and the Manual, but, by law, necessity and custom, strongly encouraged. *See* Article 34, UCMJ, 10 U.S.C. § 834. The Manual's discussion of R.C.M. 405 provides, "The primary purpose of the investigation required by Article 32 and this rule is to inquire into the truth of the matters set forth in the charges, the form of the charges, and to secure information of which to determine what disposition should be made of the case." These objectives demand that convening authorities rely heavily on legal advisors for their attainment. We find no legal or practical impediment to the summary court-martial convening authority receiving legal procedural guidance from the military lawyer detailed to appear as government's representative at the pretrial investigation. The convening authority's decision directing a pretrial investigation of charges against an accused is part of the accusatorial process required by the Code and Manual as a predicate to the decision to refer a charge to trial. As this process is intrinsically adverse to the accused's interests, the government's legal representative is one of the most appropriate individuals who may render legal advice to the convening authority.

We also hold that COL Ruggiero's order to the investigating officer did not amount to unlawful command influence nor did it affect the impartiality of the investigating officer. Article 37(a), UCMJ, 10 U.S.C. § 837(a), provides, *inter alia:*

> No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings of sentence in any case, or the action of any convening, approving, or reviewing authority with respect to his judicial acts.

The most cursory reading of the foregoing language indicates that Article 37(a) does not apply to the instant case. Article 37(a) proscribes unlawful command control over the adjudicative processes of courts-martial and other military tribunals empowered to determine guilt of an offense and to impose punishment for its commission. By definition, an Article 32 investigation is designed to gather evidence upon which a recommendation can be made to enable a convening authority to decide whether there is sufficient evidence to warrant referral of charges to trial. As such, it is accusatorial in nature and function and not subject to the principles governing disposition of allegations of violations of Article 37(a). *See United States v. Thomas,* 22 M.J. 388 (C.M.A.1986). Even assuming that Article 37(a) bars unlawful command influence over Article 32 investigating officers, none existed on the facts of this case as COL Ruggiero's order to employ the partition was authorized by the Manual.[7] R.C.M. 405(c) provides that any convening authority directing an investigation under Article 32 "may also give procedural instructions not inconsistent with these rules." Instructions which are reasonably calculated to facilitate the taking of testimony from witnesses who might otherwise be unavailable fall within the scope of the rule. R.C.M. 405(g). As there was evidence that the child might have declined to testify without the partition, the instruction in this case meets the foregoing requirement.

Intertwined with appellant's allegation of unlawful command influence is his assertion that the investigating officer was not impartial. Under the Code and R.C.M. 405(a) an accused is entitled to a "thorough and impartial investigation." However, a failure to challenge an Article 32 investigation on the grounds that the investigator was not "thorough and impartial" at the time of the investigation gener-

---

7. It could be argued, for example, that the investigating officer is a "judicial" officer entitled to unfettered discretion in the conduct of the investigation. However, we do not find support for that characterization. To the extent that an Article 32 investigating officer is a "judicial" officer with "judicial" powers, his function and powers are limited. For example, he does not rule on evidence, has no subpoena power, and his recommendation as to disposition of charges to the convening authority is simply that. His principal function is to gather evidence in a "thorough and impartial" manner.

ally operates as a waiver. *United States v. Clark,* 11 M.J. 179 (C.M.A.1981); *United States v. Lopez,* 42 C.M.R. 268 (C.M.A. 1970). In any event, our examination of the record and allied papers reveals no evidence of bias on the part of the investigating officer.

V

■ Appellant also contends that his sentence to the maximum confinement was inappropriately harsh considering his many years of outstanding service and his excellent previous disciplinary record. What we said in our first opinion in this case remains valid. As with all sentences, the court members were required to balance those factors to which appellant refers with the needs of the local military community for deterrence and retribution. Pervading this process was the nature of the crime and its psychological impact on the victim. Where an offense shocks ordinary human sensibilities because of its devastating psychological or physical effects on the victim, court members are not required to become robots by casting aside the mantle of their humanity. "Military society, through the voice of the court members, has expressed its 'moral outrage' at appellant's crimes." *United States v. Hutchinson,* 15 M.J. 1056, 1068 (N.M.C.M.R.1983). *Accord United States v. Wheeler,* 18 M.J. 823 (A.C.M.R.1984), *affirmed,* 22 M.J. 76 (C.M.A.1986). Child abuse—particularly sexual abuse—has become a notorious social problem in American society generally as well as in the armed forces. The severe sentence in this case reflects one military community's attitude toward the problem. We are not inclined to say it is inappropriate.

The court has considered the remaining allegations of error including those personally raised by the appellant and find them to be without merit.

The findings and sentence are affirmed.

Senior Judge DeFORD and Judge KANE concur.