OPINION OF THE COURT ON REMAND
LANE, Judge:
Pursuant to his pleas, the appellant was convicted by a military judge sitting as a special court-martial of larceny from the post exchange (PX), in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921 (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a bad-conduct discharge, forfeiture of $500.00 pay per month for six months, and reduction to Private El.
This case initially came before this court for review on 27 August 1992. Pursuant to United States v. Grostefon, 12 M.J. 431 (C.M.A.1982), the appellant asserted, inter alia, that his company commander, Captain (CPT) Jochen A. Thomas, was unlawfully influenced by his battalion commander (Lieutenant Colonel (LTC) Nash) to recommend specific court-martial action against him. This court affirmed the findings of guilty and the sentence without opinion. United States v. Drayton, ACMR 9201149 (A.C.M.R. 3 Dec. 1992) (unpub.).[1] On 9 July 1993, the United States Court of Military Appeals set aside our decision, and remanded the case to this court to make specific findings regarding the appellant’s assertion “that his company commander was subjected to unlawful command influence.” United States v. Drayton, 38 M.J. 310 (C.M.A.1993) (summary disposition).
Subsequently, appellate counsel filed additional pleadings relative to the remanded issue. In an affidavit admitted before this court, the appellant restates his allegation of unlawful command influence upon his company commander.[2] He further alleges, for the first time, that his battalion command sergeant major held a shoplifting briefing by PX security personnel prior to the appellant’s trial. Thereafter, “[a]ll the senior NCOs in the Battalion that would have spoke (sic) highly of me, told me ... they would have to think about it before they would testify on my behalf.” In response, the government filed an affidavit from CPT Thomas. He states that he discussed the case with his battalion commander, but denies that he was directed to recommend a certain court-martial or ever told the appellant that the decision was other than his own.[3] For the rea *871 sons set forth below, we hold that the appellant’s allegations of unlawful command influence are without merit.
I. Company Commander’s Recommendation
A.
Unlawful command influence is proscribed by Article 37(a), UCMJ, 10 U.S.C. § 837(a), which states, in pertinent part: ,
No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case, or the action of any convening, approving, or reviewing authority with respect to his judicial acts.
In United States v. Bramel, 29 M.J. 958, 967 (A.C.M.R.), aff'd, 32 M.J. 3 (C.M.A.1990) (summary disposition), this court held that the foregoing language of Article 37(a) proscribes unlawful command influence “over the adjudicative processes of courts-martial ... empowered to determine guilt ... and to impose punishment____” The court held that an Article 32, UCMJ, investigation was not subject to the principles of Article 37(a), UCMJ, as its purpose was to gather evidence upon which a recommendation as to disposition of charges could be made, making it “accusatorial in nature and function.... ” Id. In other words, the reach of Article 37(a), UCMJ, extends only to the adjudicative processes of courts-martial, not to the accusatorial processes. The recommendation of a subordinate commander to his superior commander is also part of the accusatory process leading up to the referral or nonreferral of charges for trial, and does not directly affect the conduct of the trial or the parties thereto. Thus, we hold that the alleged directive to the company commander (if it occurred) does not, as a matter of law, constitute unlawful command influence.[4]
While not so stating, Bramel in effect repudiates the broad sweep of the unlawful command control language found in United States v. Hawthorne, 7 U.S.C.M.A. 293, 22 C.M.R. 83 (1956). In Hawthorne, the court was dealing with a command directive related to the disposition of charges against repeat offenders which also prescribed that the policy would be made known to court members. The court stated that it
has consistently held that any circumstance which gives even the appearance of improperly influencing the court-martial proceedings against the accused must be condemned. In regard to the pretrial proceedings, we set aside a conviction because, in his advice to the convening authority, the Staff Judge Advocate misstated the Investigating Officer’s recommendation for trial. United States v. Greenwalt, 6 USCMA 569 [285], 20 CMR 285 [(1955) ].
Hawthorne, 22 C.M.R. at 87-88. After conceding that the court did not desire to “curb” the convening authority in the exercise of his command powers, it found that that commander’s directive sought to curb the power to exercise discretion in the disposition of charges granted by the Uniform Code of Military Justice to the accused’s immediate commander. It also found that the directive entrenched upon the accused’s right to an impartial court-martial. “In sum, the policy directive directly tended to control the judicial processes rather than merely attempting to improve the discipline of the command. It was, therefore, illegal.” Id. at 89.
*872 The major defects in Hawthorne are that the court does not distinguish between pretrial and trial processes, and never once, in its entire discussion of “command control,” does it cite Article 37, UCMJ. Likewise, Greenwalt, which the court cites as an example of improper command influence in the pretrial stages of the court-martial process, does not rest on Article 37, UCMJ. Greenwalt held that the staff judge advocate, in misstating the investigator’s recommendation, failed in his Article 34, UCMJ, obligation.[5] 20 C.M.R. at 288. Thus, we are not hesitant to follow Bramel and draw a distinction between the accusatorial and adjudicative processes in a court-martial scenario, and to find that Article 37(a), UCMJ, only applies to the latter.[6]
B.
There are two methods available for challenging deficiencies in the accusatorial process. The first is to invoke the de facto accuser doctrine. Article 1(9), UCMJ, 10 U.S.C.A. § 801(9); United States v. Corcoran, 17 M.J. 137 (C.M.A.1984). In Corcoran, the court held that a convening authority was an accuser where he was the person who directed that charges be signed and sworn to by another and had other than an official interest in the prosecution of the accused. Id. at 138. Here, the alleged improper action is by the battalion commander, who lacked authority to convene a special court-martial empowered to impose a bad-conduct discharge. Thus, there is no potential error in the referral of the charges in this case, because even if we found LTC Nash to be a de facto accuser, he is not the convening authority.
The second method for challenging defects in the accusatorial process is to invoke specific provisions of the Rules for Courts-Martial [hereinafter R.C.M.]. Rules for Courts-Martial 401(c)(2)(A) provides that when charges are forwarded to a superior commander for disposition, the forwarding commander will make “a personal recommendation as to disposition.” The Discussion of this Rule states that this recommendation is within the forwarding commander’s sole discretion and cannot be directed by other authority. R.C.M. 401 discussion. If LTC Nash had in fact overcome the independent discretion of CPT Thomas, the remedy would be to return the case to the convening authority for reconsideration, but with CPT Thomas’ unfettered recommendation before him for consideration. Cf. United States v. Crossley, 10 M.J. 376 (C.M.A.1981) (there are easy and adequate means to avoid error in' reviewing function).
The failure 'to assert errors in the accusatorial process at trial constitutes waiver. R.C.M. 801(g). Such is the case here. However, we have received detailed affidavits from the parties on this issue and, if we had to resolve this issue, we would find CPT Thomas’ affidavit more credible. He is open *873 and frank in discussing what occurred, including the fact that he discussed disposition options with LTC Nash.[7] The appellant, on the other hand,’ has a self-serving bias. When implying some nefarious plot at the battalion because CPT Thomas received paperwork with his recommendation already entered, the appellant overlooks that, since the demise of the company clerk, all paperwork for company commanders is prepared — at the commander’s direction — in the battalion administrative center. Therefore, we find that the appellant’s affidavit is not sufficient to shift the burden of disproving its content to the government beyond the point of equipoise or inconclusiveness. See United States v. Peacock, 19 M.J. 909 (A.C.M.R.), pet. denied, 20 M.J. 205 (C.M.A.1985).
II. Denial of Favorable Witnesses
On the other hand, the appellant’s allegation, now raised for the first time, that the command sergeant major’s action had the effect of denying him favorable character witnesses would, if true, amount to unlawful command influence. United States v. Treakle, 18 M.J. 646, 657 (A.C.M.R.1984). The Court of Military Appeals in United States v. Thomas, 22 M.J. 388 (C.M.A.1986), cert. denied, 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987), warned that reviewing courts cannot affirm findings of guilty in a case in which unlawful command influence has been raised unless it is persuaded beyond a reasonable doubt that the findings and sentence have not been affected. Here, because the appellant pled guilty, the only issue is whether he was deprived of extenuation and mitigation witnesses during the sentencing portion of his court-martial. We hold that he was not.
A review of the record of trial reveals that six witnesses testified for the appellant during sentencing. Three of these witnesses were noncommissioned officers, two of them senior to the appellant, from his unit, to wit: Company D, 369th Signal Battalion. We find this strong evidence that senior noncommissioned officers in the appellant’s unit were not improperly influenced by the command sergeant major’s briefing. See United States v. Stokes, 19 M.J. 781 (A.C.M.R.1984).
III. Evidentiary Hearing
In remanding the case to this court, the Court of Military Appeals stated that it believed “it is necessary for the court below to make specific findings regarding this issue after such factual inquiries as it deems appropriate.” Although there is an evidentiary conflict between the government’s and the appellant’s post-trial affidavits, we do not believe it is necessary to order an evidentiary hearing. See United States v. Tyler, 36 M.J. 641 (A.C.M.R.1992), pet. denied, 39 M.J. 414, 415 (C.M.A.1994).
Both of the issues raised in this appeal were matters clearly known to the appellant before trial. The Army has gone to great length and expense to provide accused soldiers with an independent judiciary and an independent corps of defense counsel, free from any hint of command control. Army Reg. 27-10, Legal Services: Military Justice, paras. 6-2, 6-3, 6-llb, 8-1 and 8-4 (22 Dec. 1989). The crucible of the trial adversary process is the proper place to contest such matters and to obtain immediate and effective relief from the military judge.
Saving such complaints for litigation on appeal is contrary to the orderly administration of military justice, and should not be readily condoned by the appellate courts. As we said in United States v. Lewis, 38 M.J. 501 (A.C.M.R.1993),
[W]e have a responsibility to ensure that the military criminal justice system functions in a manner that not only protects the rights of the accused but also operates efficiently.
Where the evidence contained in the record of trial, allied papers, and post-trial affidavits is sufficient to enable an appellate court to rationally conclude that the appellant either has or has not established [his claim of error], it may be unnecessary *874 to order an evidentiary hearing with its attendant delay, additional cost, and administrative burden on the military criminal justice system.
Id, at 514, 519. Inasmuch as we have received detañed affidavits from both parties, and have been able to resolve the issues on the basis of the record before us; the ends of justice do not require the expense and burden of an evidentiary hearing.
The remaining assertions of error, to include those raised personally by the appellant are without merit.
The findings of guüty and the sentence are affirmed.
Senior Judge WERNER and Judge RUSSELL concur.

. This issue was not raised at trial and no evidence was presented in support of the allegation on appeal. See United States v. Cruz, 20 M.J. 873, 886 (A.C.M.R.1985), rev’d on other grounds, 25 M.J. 326 (C.M.A.1987) (evidence insufficient to shift burden to government).

. He states, in pertinent part:
The Company Commander then informed me that I would have a Special Court-Martial to empower (sic) a Bad Conduct Discharge. I said, "Sir, don't you think that is a little hard and harsh.” The Company Commander then said that he agreed with me, but said that the Battalion Commander had a bad track record for courts-martial ... [and] ... this was going to be an easy win. The Company Commander said he was sorry, but it was out of his hands now.
The Company Commander said that he was told by the Battalion Commander to recommend the Special Bad Conduct Discharge (sic), in fact, the paperwork was done at the Battalion and sent to the Company Commander for his signature. His recommendation was already decided from the paperwork which he had on his desk discussing with me.

. In his affidavit, CPT Thomas states:
We discussed all levels of disciplinary action, ranging from Article 15 to Courts Martial (sic) and LTC Nash told me that it was my decision and to think about it and let him know what I *871 wanted to do. After two days of consideration, I decided on a BCD Special Courts Martial (sic). I did this because a senior NCO can not make mistakes like shoplifting, to set an example for other soldiers, and because after viewing the two video tapes I felt that this -was not a one time incident.
On 27 March 1992, ... I read him the charges and asked if he had any questions. He said "Sir, don’t you think that a BCD Special is a little harsh”, (sic) after which I explained my reasoning and told him that this wasn't a personal issue against him. LTC Nash never insisted that I proceed with a BCD Special and I never told SSG Drayton that I thought a BCD Special was to (sic) harsh a disciplinary action.

. This case differs from United. States v. Hinton, 2 M.J. 564 (A.C.M.R.1976). In Hinton, the subordinate commander testified that he changed his recommendation to a higher level of court-martial than he thought appropriate at the direction of his battalion commander. Even then, the court did not find unlawful command influence (or a denial of due process), but rather a "usurpation” of the subordinate’s discretion.

. Article 34, UCMJ, as it existed in 1955 when Greenwalt was decided, provided in part that
(a) Before directing the trial of any charge by general court-martial, the convening authority shall refer it to his staff judge advocate or legal officer for consideration and advice.
Uniform Code of Military Justice art. 34, ch. 169 § 1, 64 Stat. 119 (1950) (current version at 10 U.S.C. § 834 (1988)). The Court of Military Appeals had held that this is an important pretrial protection accorded to the accused and that unless the staff judge advocate reviews the record thoroughly and accurately, he cannot soundly advise the convening authority. United States v. Schuller, 5 U.S.C.M.A. 101, 17 C.M.R. 101, 105 (1954).

. This approach is supported by the Court of Military Appeals’ opinion in United States v. Blaylock, 15 M.J. 190 (C.M.A.1983). There the court stated that
If we interpret Article 37 as prohibiting an officer exercising general court-martial jurisdiction from intervening when he concludes that charges should be withdrawn [from an inferior court], the resulting situation would be inconsistent with the military command structure, whereunder a superior commander can direct the actions of a subordinate.
Under the law of war, commanders may be held responsible for failure to control their troops and to maintain discipline. Cf. In re Yamashita, 327 U.S. 1, 66 S.Ct. 340, 90 L.Ed. 499 (1946). Therefore, we should hesitate to infer from the general language of Article 37 the existence of such limitations on the commander’s power to assure that crimes are referred to tribunals that can mete out adequate punishment.
Id. at 194. We agree, and believe Bramel is consistent with this philosophy.

. There is nothing improper with superior and subordinate commanders conferring on possible means of disposing of charges against a soldier, as long as the final recommendation comports with R.C.M. 401’s mandate that it be solely that of the recommending official. United States v. Rivera, 45 C.M.R. 582, 584 (A.C.M.R.1972) (Hod-son, Chief Judge).