**UNITED STATES, Appellee**

v.

**Mack A. DRAYTON, Staff Sergeant,
U.S. Army, Appellant.**

No. 93–0348.
CMR No. 9201149.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 4, 1996.

Decided Sept. 30, 1996.

For Appellant: *Captain Michael E. Hatch* (argued); *Colonel Stephen D. Smith* and *Lieutenant Colonel John T. Rucker* (on brief); *Major Michael A. Egan.*

For Appellee: *Captain David F. Musel* (argued); *Colonel John M. Smith, Lieutenant Colonel Eva M. Novak* and *Major Lyle D. Jentzer* (on brief); *Lieutenant Colonel James L. Pohl* and *Captain Michael E. Mulligan.*

*Opinion of the Court*

GIERKE, Judge:

Appellant was caught by a security videocamera in the act of shoplifting from the Post Exchange (PX) at Fort Gordon, Georgia. Before a military judge sitting as a special court-martial, appellant pleaded guilty to stealing a fishing reel, a compact disc player, five "Nintendo" cartridges, and a pair of sunglasses, worth a total value of $398.70, in

violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. The approved sentence provides for a bad-conduct discharge, forfeiture of $500.00 pay per month for 6 months, and reduction to the lowest enlisted grade. The Court of Military Review[1] affirmed the findings and sentence in an unpublished opinion on December 3, 1992. Our Court set aside that decision and remanded the case for further review of allegations of unlawful command influence raised by appellant for the first time on appeal. 38 MJ 310 (CMA 1993) (summary disposition). On further review, the Court of Military Review rejected appellant's assertions of unlawful command influence. 39 MJ 871 (1994).

We granted review of the following issues:

## I

WHETHER [APPELLANT'S] COMPANY COMMANDER WAS SUBJECTED TO UNLAWFUL COMMAND INFLUENCE BY HIS BATTALION COMMANDER PRIOR TO THE PREFERRAL OF THE CHARGE.

## II

WHETHER THE [COURT OF MILITARY REVIEW'S] DECISION WITH REGARD TO THE ACTIONS OF THE COMMAND SERGEANT MAJOR WAS INADEQUATE AND INCORRECT.

We resolve both issues against appellant.

### Factual Background

In a post-trial affidavit, appellant asserted that his company commander, Captain (CPT) Thomas, was coerced by the battalion commander, Lieutenant Colonel (LTC) Nash, into preferring charges and recommending trial by a court-martial empowered to adjudge a bad-conduct discharge. Appellant avers that, upon being advised by CPT Thomas of his recommendation, appellant protested, "Sir, don't you think that is a little hard and harsh [?]" Appellant further asserts that CPT Thomas "said that he agreed with me," but "that he was told by the Battalion Commander to recommend the Special Bad Conduct Discharge...."

Regarding the actions of the battalion command sergeant major, appellant asserts that the larceny charges against him were the subject of a Noncommissioned Officer Development Program. In his affidavit, appellant states:

Never before did they have a "NCODP" (NCO Development Program) on a larceny charge, but there were many other cases in the Company and Battalion at Fort Gordon.

Two weeks after I was charged with larceny they showed the tapes to all the NCOs in the Brigade. *The tapes were not about me, but after security from the PX finished,* the Battalion Command Sergeant Major talked about the NCO in the Battalion who was charged and stated it didn't look good for him. I knew they all formed an opinion. All the senior NCOs in the Battalion that would have spoke highly of me, told me what happened and that they would have to think about it before they would testify on my behalf.

(Emphasis added.)

In an affidavit submitted by the Government, CPT Thomas states that he discussed appellant's case with LTC Nash. He further states they "discussed all levels of disciplinary action, ranging from Article 15 to Courts-Martial and LTC Nash told me that it was my decision and to think about it and let him know what I wanted to do." Regarding his recommended disposition of the case, CPT Thomas states, "After two days of consideration, I decided on a BCD Special Courts-Martial. I did this because a senior NCO can not [sic] make mistakes like shoplifting, to set an example for other soldiers, and because after viewing the two video tapes I felt that this was not a one time incident."

CPT Thomas described his meeting with appellant as follows:

After [appellant's] arrival I read him the charges and asked if he had any questions. He said, "Sir, don't you think that ·a BCD

---

1. *See* 41 MJ 213, 229 n. * (1994).

Special is a little harsh," after which I explained my reasoning and told him that this wasn't a personal issue against him. LTC Nash never insisted that I proceed with a BCD Special and I never told SSG Drayton that I thought a BCD Special was to [sic] harsh a disciplinary action.

The Court of Military Review held that any defects in CPT Thomas' preferral and forwarding of charges were waived by failure to raise them at trial. Nevertheless, the court discussed the merits of the issue and found that CPT Thomas' affidavit was more credible than appellant's. Accordingly, the court below found "that the appellant's affidavit is not sufficient to shift the burden of disproving its content to the government beyond the point of equipoise or inconclusiveness." 39 MJ at 875.

Regarding the command sergeant major's actions, the court below noted that six witnesses from appellant's company testified for appellant during sentencing, including noncommissioned officers who were senior to appellant. The court below found the testimony of these witnesses was "strong evidence that senior noncommissioned officers in the appellant's unit were not improperly influenced by the command sergeant major's briefing." 39 MJ at 875.

### Coerced Preferral and Recommendation (Issue I)

■ Appellant argues that this Court should not apply waiver to appellant's failure to assert the defects in preferring and forwarding the charges. He asks this Court to "erase" our application of waiver in *United States v. Hamilton*, 41 MJ 32 (CMA 1994). Finally, he argues that, even if waiver applies, the defects constituted plain error.

The Government argues that the error was waived. They argue further that CPT Thomas' affidavit rebuts appellant's claim of unlawful command influence.

In *Hamilton*, we held that failure to raise the issue of a coerced preferral of charges or a coerced recommendation for a particular

disposition waives the defect, unless an accused is deterred from raising it at trial by unlawful command influence. 41 MJ at 37. The relevant facts were known to appellant before trial. Appellant has not asserted that he was deterred at trial from objecting to a coerced preferral or recommendation. Accordingly, we hold that any alleged defects based on coercion were waived.[2]

### Intimidation of Potential Witnesses

■ Appellant argues that the court below erred by merely tallying the number of witnesses who testified without the aid of additional affidavits or an evidentiary hearing. The Government argues that appellant's affidavit is insufficient to raise the issue of unlawful command influence.

In *United States v. Ayala*, 43 MJ 296, 299 (1995), we said that "[t]he defense has the initial burden of producing sufficient evidence to raise unlawful command influence." In *Ayala*, the affidavit listed the witnesses who had indicated willingness to testify and described their response after the alleged unlawful influence. Appellant's post-trial evidence is much weaker than the evidence in *Ayala*. Appellant has named no witnesses who were intimidated and provided no clue as to their expected testimony.

It is risky for a person in authority to comment on the merits of a pending case, especially in the presence of subordinates. Nevertheless, the command sergeant major's remarks, even when read in the light most favorable to appellant, merely recite a truism, that "it didn't look good for" appellant. This remark states the obvious, since appellant was caught in the act of shoplifting by a videocamera.

Appellant alleges no express or implied threats. The meeting of noncommissioned officers appears to have been a demonstration of the PX video security system by PX security officers, rather than a command sponsored diatribe against appellant. To the extent that the command sergeant major in-

---

2. Even before our decision in *United States v. Hamilton*, 41 MJ 32 (1994), Army jurisprudence applied waiver for failure to challenge allegedly coerced preferrals or coerced recommendations.

*See United States v. Bramel*, 29 MJ 958 (ACMR), *aff'd*, 32 MJ 3 (CMA 1990) (summary disposition), cited by the court below, 39 MJ at 873.

tended to influence his subordinates, his efforts were limited to deterring them from shoplifting, not deterring them from testifying for appellant.

The record shows that two defense witnesses, Master Sergeant McMillan and Sergeant First Class (SFC) Smith, were from outside appellant's battalion. Two witnesses, SFC Madden and SFC Douglas, were senior to appellant and from his company. Staff Sergeant Weston, a co-worker, was from appellant's company. We are left to speculate who, if anyone, from appellant's battalion was intimidated into silence by the battalion command sergeant major.

Our observation in *United States v. Johnston,* 39 MJ 242, 244 (1994), bears repeating: "[T]he threshhold triggering further inquiry should be low, but it must be more than a bare allegation or mere speculation." We hold that appellant's "bare allegation" is insufficient to raise the issue of unlawful command influence.

### Decision

The decision of the United States Army Court of Military Review on remand is affirmed.

Chief Judge COX and Judge CRAWFORD concur.

SULLIVAN, Judge (dissenting):

The majority characterizes the coercion of a company commander (a captain) by a battalion commander (a lieutenant colonel) in the pre-referral process as a "defect." 45 MJ at 182. I call it unlawful command influence. Article 37(a), Uniform Code of Military Justice, 10 USC § 837(a), on its face prohibits coercion by a superior officer of subordinate commanders in their military justice functions. It states in part: "No person subject to this chapter may attempt to *coerce* or, by an unauthorized means, influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case, or the action of any convening, approving, or reviewing authority with respect to his judicial acts." (Emphasis added.) The majority's embrace of "Army juris-

prudence" and its hyper-technical approach to unlawful command influence in derogation of our own case law is truly dispiriting. *See United States v. Drayton,* 39 MJ 871, 873–74 (ACMR 1994); *United States v. Bramel,* 29 MJ 958, 967 (ACMR), *aff'd,* 32 MJ 3 (CMA 1990); *contra United States v. Hawthorne,* 7 USCMA 293, 22 CMR 83 (1956).

More particularly, unlawful command influence has not disappeared from our military justice system. *See United States v. Gleason,* 43 MJ 69, 73 (1995). Only its prohibition has. The trivialization of such conduct as a mere procedural "defect" is one example of this approach as championed by the Army Court of Military Review. *See United States v. Bramel,* 29 MJ at 967 (Article 37(a) does not bar unlawful command influence over accusatorial process); *United States v. Drayton,* 39 MJ 871, 873–74 (ACMR 1994). I disagree with this unprecedented narrowing of Article 37(a), and what I perceive as the continued abdication of this Court's responsibility to ensure the integrity of the military justice system. *See United States v. Ayala,* 43 MJ 296 (1995); *United States v. Weasler,* 43 MJ 15 (1995); *United States v. Hamilton,* 41 MJ 32 (CMA 1994); *United States v. Stombaugh,* 40 MJ 208 (CMA 1994).

I agree with this Court's decision in *United States v. Hawthorne,* 7 USCMA 293, 22 CMR 83 (1956). There, this Court reversed a court-martial conviction because a superior commander unlawfully exercised coercion over a subordinate commander's recommendation to refer a case to a general court-martial. Oh, how different were the words of that Vigilant Court: "This Court has consistently held that *any circumstance* which gives even the appearance of improperly influencing the court-martial proceedings against the accused must be condemned." *Id.* at 297, 22 CMR at 87 (emphasis added). Moreover, the Court particularly addressed the question of coercion in a meaningful way. "[W]hen the commander extends his authority into forbidden areas, we must strike down his action." *Id.* at 299, 22 CMR at 89. As long as Article 37(a) is the *law of this land,* I too cannot and will not ignore or disregard it. *See generally Weiss*

*v. United States,* 510 U.S. 163, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994).

The majority's adoption of the Army Court's "defect" approach to the pre-referral process pays lip service to this Court's decisions in *United States v. Blaylock,* 15 MJ 190 (CMA 1983), and *United States v. Johnston,* 39 MJ 242 (CMA 1994). In *Johnston,* this Court stated quite clearly in the pre-referral context that "[w]e adhere to the *Blaylock* rule: Unlawful command influence is not waived by a failure to raise it at trial." *Id.* at 244. By now declaring that coercion at this stage of the proceedings is no longer to be considered unlawful command influence in violation of Article 37(a), the majority attempts to skirt the above rule. In the process, of course, it overturns another decision of this Court, some 40 years old, without even mentioning it. *See United States v. Hawthorne, supra.* I note that Judge Wiss correctly recognized this stratagem in his separate opinion in *United States v. Hamilton, supra* at 40–41, and properly rejected it. I will not join in this judicial dismemberment of Article 37(a), the *"sine qua non"* of our military justice system.

Another aspect of the majority's reasoning is equally dispiriting. In evaluating the impact of the command sergeant major's pretrial remarks about appellant to the other NCOs of the battalion with regard to possible intimidation of potential witnesses, the majority excuses the remark as "a truism" since "[t]his remark states the obvious, since appellant was caught in the act of shoplifting by a videocamera." 45 MJ at 182. Perhaps a man such as appellant, with strong proof against him before trial, needs protection from pretrial remarks about the outcome of his trial from powerful members of the command. Such a man is perhaps more in need of a neutral environment in which he can secure character witnesses before his trial. Command must refrain from pre-judging a case before trial. In the American military, innocence should be presumed and not be dispelled prior to trial. This command sergeant major should have refrained from asserting his opinion to the NCOs beneath him. What damage was done, we will probably never know. Without the evidentiary hearing that should have been ordered by our court or the court below, we have no chance of ever knowing.

EVERETT, Senior Judge (dissenting):

I do not agree with the majority's holding that "any alleged defects [in the preferral process] based on coercion were waived" by appellant's failure to raise the matter at trial. 45 MJ at 182. Following the rationale set out by Judge Wiss in his opinion concurring in the result in *United States v. Hamilton,* 41 MJ 32, 40–41 (CMA 1994), I would not invoke waiver as a bar to our resolving the merits of an allegation of command influence, whatever the stage at which it purportedly had occurred. *Accord United States v. Blaylock,* 15 MJ 190, 193 (CMA 1983).