*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

─────────────

**UNITED STATES**
Appellee

**v.**

**Ronald C. GIVENS, Specialist**
United States Army, Appellant

**No. 21-0086**
Crim. App. No. 20190132

Argued October 19, 2021—Decided April 5, 2022

Military Judge: David H. Robertson

For Appellant: *Captain Joseph A. Seaton Jr.* (argued); *Colonel Michael C. Friess* and *Major Jodie L. Grimm* (on brief); *Major Joyce C. Liu* and *Captain Catherine E. Godfrey.*

For Appellee: *Captain A. Benjamin Spencer* (argued); *Colonel Steven Haight, Lieutenant Colonel Craig Schapira,* and *Lieutenant Colonel Wayne H. Williams* (on brief).

Judge SPARKS delivered the opinion of the Court, in which Judge HARDY and Judge MAGGS joined. Chief Judge OHLSON filed a dissenting opinion, in which Senior Judge EFFRON joined.

─────────────

Judge SPARKS delivered the opinion of the Court.

Consistent with his plea, Appellant was convicted at a general court-martial of one specification of assault consummated by a battery, in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928 (2012 & Supp. IV 2016). Contrary to his pleas, a panel of members with enlisted representation convicted Appellant of one specification each of making a false official statement, larceny of military property, assault consummated by a battery, communicating a threat, and child endangerment, in violation of Articles 107, 121, 128, and 134, UCMJ, 10 U.S.C. §§ 907, 921, 928, 934 (2012 & Supp. IV 2016), respectively.[1] After reviewing the legal and factual sufficiency of the findings, the United States

─────────────

[1] Appellant later amended his plea and pleaded guilty with exception to Specification 3 of Charge III.

Army Court of Criminal Appeals found the evidence of child endangerment legally insufficient, and accordingly, dismissed that offense. *United States v. Givens*, No. ARMY 20190132, 2020 CCA LEXIS 366, at *4–5, 2020 WL 6146572, at *1 (A. Ct. Crim. App. Oct. 19, 2020) (unpublished).

Two days before trial was scheduled to begin, Appellant filed a motion for appropriate relief based on claims of defective preferral and accusatory unlawful command influence. The military judge denied the motion on the grounds that it was untimely and good cause did not exist to excuse the untimely filing.

We granted review to determine whether the military judge erred in denying Appellant's motion on procedural grounds or if the military judge abused his discretion in not finding good cause shown for the delay.[2] We hold that the military judge did not err in his ruling by denying Appellant's motion on procedural grounds and did not abuse his discretion by ruling good cause was not established.

## Background

The charges at issue in this appeal arose from Appellant's poor management of his personal and financial affairs. Following two separate series of events, charges and specifications were drafted against Appellant by the trial counsel, CPT JE.[3] CPT JE brought these charges to CPT CF, Appellant's company commander, in April 2018, and the convening authority referred these charges to a general court-martial in June 2018.

In August 2018, charges were withdrawn to permit an Article 32(a), UCMJ, 10 U.S.C. § 832(a) (2018) hearing, which resulted in the preferral of an additional charge of adultery

---

[2] We granted review of the following issue: "Whether the military judge erred in denying the defective preferral/unlawful command influence motion on procedural grounds."

[3] All names, other than Appellant's, are referenced by initial or official title. These identities are equivalent to the pseudonyms used by the Court of Criminal Appeals in *Givens*, 2020 CCA LEXIS 366, 2020 WL 6146572.

against Appellant in October. In November 2018, the convening authority referred all charges, including the original charges and the additional charge of adultery.

In November 2018, Appellant was arraigned, where he pleaded "not guilty" to all charges and specifications. Before receiving his pleas, the military judge "advise[d Appellant] that any motion to dismiss or grant other appropriate relief should be made at this time." The military judge then issued a pretrial order requiring written motions to be submitted prior to trial by December 4, 2018.

The day of the deadline, the defense raised no motions, but did submit its witness list, identifying CPT CF as a witness for sentencing.

On January 11, 2019, the military judge held a hearing on all motions filed by the parties at that time. None of the motions filed by Appellant challenged or objected to the preferral of charges based on defective preferral or accusatory unlawful command influence.

However, two days prior to trial, on Sunday, February 24, 2019, Appellant filed a motion for appropriate relief, seeking inter alia, dismissal of the charges and disqualification of the trial counsel based on defective preferral and apparent unlawful command influence.

Appellant argued that this motion embodied a combination of two, separate but related, errors. On one front, the motion alleged the preferral was defective because CPT JE coerced CPT CF into preferring charges that CPT CF did not believe were true, and of which CPT CF lacked personal knowledge. Secondarily, the motion alleged that CPT JE's act of coercing CPT CF to prefer charges also constituted unlawful command influence.

During oral argument on the motion the following day, defense counsel proffered that he had "just found [out] about [CPT CF's] knowledge . . . of this stuff on Friday." The defense presented to the military judge a time line of events which he believed established the defective preferral issue, as well as the unlawful command influence claim. The defense focused on the following language from a sworn affidavit provided by CPT CF as a basis to these claims:

> When I first spoke to CPT [JE] about the charges against [Appellant], I told him that I understood the domestic violence charges but I want to deal with the rest of the charges at my level. I told him that I did not agree with the charges for BAH [Basic Allowance for Housing] fraud, the false official statement, the assault on the other Soldier, and the child endangerment. . . . I told CPT [JE] that I did not agree with the charges, and he told me that if I did not prefer charges, someone else would. CPT [JE] said that this was going to Court-Martial, this is a Court-Martial offense. . . . I did not want someone else to tell [Appellant] about the charges, and I thought if someone else was going to prefer charges anyway, I might as well sign the charge sheet. . . . I decided that I had to prefer charges or someone else would. Throughout the experience with CPT [JE], I felt that [Appellant's] case was dealt with especially harsh [sic]. [Appellant] deserved punishment for the domestic incident, however, not to this extent.
>
> . . . .
>
> Last Friday, 22 February 2019, CPT [JE] called me to discuss this case. He explained to me that when I preferred charges I knew that I always knew I have the option to take action or not take action. I told him, "when I preferred charges, I did not feel that I have any other option but prefer charges." "If l had an option, I would not have checked Court-Martial for this case." I do not feel that CPT [JE] ordered me to prefer charges, but I did not feel that I had an option either.

No additional evidence was offered to address when the defense knew or should have known about the unlawful command influence issue. Nor did the defense proffer how it came to be aware of the issues with preferral and unlawful command influence.

The military judge then denied Appellant's motion on procedural grounds, noting that the motion was filed two days before trial and months after the filing deadline established in the pretrial order. He explained: "Good cause does not exist for filing this motion on the eve of trial."

**Law**

Generally, any person subject to the UCMJ may prefer charges, however, the accuser must state that the charges "are true in fact to the best of his knowledge and belief." *United States v. Hamilton*, 41 M.J. 32, 36 (C.M.A. 1994) (internal quotation marks omitted) (quoting Article 30(a)(2), UCMJ, 10 U.S.C. § 830(a)(2)). Under Rule for Courts-Martial (R.C.M.) 307(b), through the accuser's signature, preferral signifies that a person has sworn an oath to assure that they have either personal knowledge of or investigated the matters set forth in the charges and specifications.

"A person who has been ordered or coerced into preferring charges becomes an 'accuser' within the meaning of Article 1(9), UCMJ, 10 USC § 801(9)." *Hamilton,* 41 M.J. at 36. "An accuser is disqualified from acting as a convening authority in that case." *Id.* (citing *United States v. Jeter*, 35 M.J. 442 (C.M.A. 1992)).

R.C.M. 905(b)(1) requires that any pretrial motion asserting "[d]efenses or objections based on defects (other than jurisdictional defects) in the preferral, forwarding, or referral of charges, or in the preliminary hearing," "must be raised before a plea is entered."

Thus, challenges alleging defects in the preferral of the charges must be raised prior to entry of pleas. At the time of trial in this case, R.C.M. 905(e) set forth the consequence for not raising such challenges prior to entry of pleas. "Failure by a party to raise defenses or objections or to make motions or request which must be made before pleas are entered under subsection (b) of this rule shall constitute waiver. The military judge for good cause shown may grant relief from the waiver." R.C.M. 905(e) (2016 ed.).

In *Hamilton*, 41 M.J. 32, this Court examined the situation where, as in the case here, a claim of defective preferral was based upon a coerced preferral, raising the specter of unlawful command influence. There, the Court established the now long-standing proposition that "[i]f a commander is coerced into preferring charges that he does not believe are true, the charges are treated as unsigned and unsworn." *Id.* at 36 (citations omitted); *see United States v. Miller*, 33 M.J. 235 (C.M.A. 1991)). The Discussion section of R.C.M. 905(b)(1)

identifies "unsworn charges" as a "defect[]" under the rule. Thus, the rule established by *Hamilton* and its progeny is that claims of defective preferral based on allegations of unlawful command influence must be raised prior to entry of pleas. Moreover, such claims are subject to waiver unless the military judge relieves that party from the waiver after a showing of good cause.

Unlawful command influence is generally reviewed as an accusatory (preferral, forwarding, and referral of charges) or adjudicative (interference with witnesses, judges, members, and counsel) claim. *United States v. Weasler*, 43 M.J. 15, 17–18 (C.A.A.F. 1995). It is therefore necessary, to determine whether an allegation of unlawful command influence in a given case pertains to the preferral of charges, forwarding of charges, referral, trial, or post-trial review, in order to determine the applicable rules of law. R.C.M. 905. Appellant here claims unlawful command influence in the context of the preferral of charges, therefore, he is asserting a claim of accusatory unlawful command influence.

This Court has previously required appellants to raise accusatory claims of unlawful command influence before pleas are entered. *Hamilton*, 41 M.J. at 36; *United States v. Richter*, 51 M.J. 213, 224 (C.A.A.F. 1999). In *United States v. Argo*, we reviewed an allegation of unlawful command influence affecting the Article 32, UCMJ, investigation process as an objection covered by R.C.M. 905(b)(1), highlighting that motions or objections based on defective investigation must be made before pleas. 46 M.J. 454, 459 (C.A.A.F. 1997).

Our case law reveals that claims of accusatory unlawful command influence must be reviewed as pretrial defects, and must be held to the deadline set out in R.C.M. 905(b). *Hamilton*, 41 M.J. at 36; *Richter*, 51 M.J. at 224.

## Standard of Review

We review whether an appellant has waived an issue, a question of law, de novo. *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017) (citing *United States v. Rosenthal*, 62 M.J. 261, 262 (C.A.A.F. 2005)).

We review a military judge's determination as to whether there was "good cause" shown for an abuse of discretion.

*United States v. Jameson*, 65 M.J. 160, 163 (C.A.A.F. 2007).
"The abuse of discretion standard is a strict one, calling for
more than a mere difference of opinion." *United States v.
McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000).

### Discussion

Appellant contends the military judge erred in denying his
motion for appropriate relief based on the failure to raise a
timely objection for defective preferral. Appellant concedes
his defective preferral motion was untimely. Still, he argues
that the same claim, styled as unlawful command influence,
is subject to the ordinary deadline of adjournment under
R.C.M. 905(e)(2).

Alternatively, even if the unlawful command influence
motion was waived, Appellant asserts "good cause" has been
established, per R.C.M. 905(e), and the military judge abused
his discretion in ruling otherwise. Because the Government
argues that the defense waived these claims due to an un-
timely objection, we address this issue first.

### A. Defective Preferral is Governed by
### R.C.M. 905(b)(1) and Case Law

This Court has routinely found claims of defective prefer-
ral waived if not raised "at trial." *Hamilton*, 41 M.J. at 37;
*Richter*, 51 M.J. at 223; *United States v. Drayton*, 45 M.J. 180,
182 (C.A.A.F. 1996). We stated previously that the failure to
object to a defective preferral waives the error. *Hamilton*, 41
M.J. at 36; *see Frage v. Moriarty*, 27 M.J. 341 (C.M.A. 1988);
*United States v. Taylor*, 15 C.M.A. 565, 36 C.M.R. 63 (1965);
*United States v. May*, 1 C.M.A. 174, 2 C.M.R. 80 (1952);
*United States v. Miller*, 31 M.J. 798, 801 (A.F.C.M.R. 1990).

In *Drayton*, we explained "the relevant facts were known
to appellant before trial. Appellant has not asserted that he
was deterred at trial from objecting to a coerced preferral or
recommendation. Accordingly, we hold that any alleged de-
fects based on coercion were waived." 45 M.J. at 182.

Here, Appellant raised a motion seeking to dismiss the
case based on an alleged defective preferral, as well as seek-
ing to disqualify trial counsel for his unlawful influence over
preferral of the charges. This motion was raised before trial
began, but after Appellant had already entered his pleas.

On its face, the motion appears to be an attempt by the defense to raise a claim of unlawful command influence as a way to circumvent the untimely filing of the defective preferral motion. Still, even after Appellant conceded "the portion of the defense motion related to defective preferral was untimely," he believed his unlawful command influence claim could still be properly raised, because it was raised "at trial." Here, Appellant unavailingly seizes on one sentence in *Hamilton. See* 41 M.J. at 37 (claims of defective preferral are waived if not raised "at trial").

In *Hamilton* and the similar cases that followed, the appellants' claims of defective preferral based on unlawful command influence were never initially raised during the trial at all. *Id.* at 34 (raised for the first time before the Court of Military Review); *Richter*, 51 M.J. at 223 (raised for the first time on appeal); *Drayton*, 45 M.J. at 182 (raised for the first time on appeal). The term "at trial" simply reflected the procedural posture of the appellate claims in those cases. This understanding of the term best aligns with our reading of the R.C.M. and our case law.

Thus, applying our understanding of the established precedent on this issue, we find no error in the military judge's denial of Appellant's motion based on its untimely status. Any objections asserting a defect in the preferral of charges based upon unlawful command influence needed to be raised prior to the entry of pleas, per R.C.M. 905(b)(1). Appellant also does not assert he was "deterred at trial from objecting to a coerced preferral," therefore, the alleged defects were waived. *Drayton*, 45 M.J. at 182.

### B. "Good Cause" Shown May Excuse Waiver

Although we conclude waiver applies to Appellant's motion to dismiss because of an untimely filing, we must examine whether the military judge abused his discretion in not finding "good cause" for Appellant's delay in filing.

Under R.C.M. 905(e) (2016 ed.), and our case law, a "military judge for good cause shown may grant relief from the waiver."[4] *United States v. Hardy*, 77 M.J. 438, 441

---

[4] The President amended the language of R.C.M. 905(e) in Executive Order No. 13,825. *See* Exec. Order No. 13,825, 83 Fed. Reg.

(C.A.A.F. 2018); *Jameson*, 65 M.J. at 163; *United States v. Nickerson*, 27 M.J. 30, 32 (C.M.A. 1988). In our review of "good cause shown," we have routinely analyzed this exception to waiver as a burden upon the moving party. *Jameson*, 65 M.J. at 162–63; *Nickerson*, 27 M.J. at 32 ("appellant failed to show good cause, namely that relief from his earlier waiver was necessary").

In *Jameson*, we concluded that good cause does not exist when "the defense knew or could have known about the evidence in question before the [relevant] deadlines." 65 M.J. at 163. This includes instances where the defense had access to evidence and witnesses before trial, but failed to find out relevant information. *Id*. Although *Jameson* is distinguishable,[5] the case announces the applicable standard to the facts now before us.

We conclude that the military judge did not abuse his discretion. Appellant missed the deadline set out under R.C.M 905(b)(1) and failed to establish "good cause" for the delay in filing his motion. Appellant stated the delay in filing came as a result of the defense only recently learning of potential improper influence in the preferral of charges, but could not establish why this information could not have been pursued earlier.

---

9889, 9985 (Mar. 8, 2018) (effective Jan. 1, 2019). The amendment specifies that a failure to raise an objection under R.C.M. 905(b) "forfeits" the objection "absent an affirmative waiver." *Id.* This amendment, however, does not apply to the present case. *Id.*

[5] Two distinguishing facts articulate the rationale behind the ruling in *Jameson*. First, the military judge "fully probed defense counsel's reasons for not making a timely motion." 65 M.J. at 163. The military judge here conducted limited factfinding in establishing a time line in which he determined "the facts upon which the defective preferral and unlawful command influence portions of the motion are based were discoverable by the defense beginning on 23 April 2018, the date of preferral." Secondly, defense counsel in *Jameson* waited until the government's case-in-chief to raise a motion to suppress even though the defense "knew about the evidence at issue." *Id.* In the case before us, defense counsel submitted the motion prior to trial and only days after learning of the relevant evidence.

While Appellant acknowledged the factual basis for his claims could have been learned prior to the entry of pleas, Appellant stated there was no reason to suspect that CPT JE improperly influenced CPT CF.

When given the opportunity by the military judge, the defense failed to address how it became aware of the unlawful command influence issue or why it could not have been explored before the entry of pleas. CPT CF had been listed as a witness for the defense for months by the time the motion was filed, but for reasons indiscernible from the record, Appellant did not seek to interview him at that time. Furthermore, Appellant styled his motion for relief in part as one regarding defective preferral, and at that moment, would have been on notice that good cause would be required to relieve him from the waiver. Despite this, Appellant failed to carry his burden to demonstrate to the military judge why good cause existed to relieve him from the consequence of waiver. Therefore, we are compelled to conclude the military judge did not abuse his discretion in denying the motion.

## Conclusion

We hold that the military judge did not err by denying Appellant's motion on procedural grounds and there was no abuse of discretion in ruling good cause was not established. The decision of the United States Army Court of Criminal Appeals is affirmed.[6]

---

[6] On October 19, 2021, Government appellate counsel moved to supplement the record concerning his response to a question from the bench during oral argument. On consideration by the Court, the motion is granted.

Chief Judge OHLSON, with whom Senior Judge EFFRON joins, dissenting.

This case revolves around a straightforward question: When must an accused raise a claim of accusatory unlawful command influence (UCI) in order for that claim to be considered timely?

In the present case, the defense received evidence—after the entry of pleas—that a serious breach of the prohibitions against unlawful command influence had occurred at the accusatory stage of the proceedings. The defense received this information shortly before the presentation of evidence on the merits and promptly brought the evidence to the attention of the military judge. However, the military judge declined to address the merits of the motion, ruling that the defense filing was untimely.

The majority opinion concludes that the military judge did not err. However, for the reasons set forth below, I conclude that the military judge erred in two critical respects. First, the ruling of the military judge did not take into account the recognition in our case law of the importance of permitting an accused to raise an accusatory UCI claim at any point before the adjournment of an accused's trial. Second, even assuming that the filing did not meet the timing requirements of Rule for Courts-Martial (R.C.M.) 905(b)(1), I conclude that the military judge erred by failing to conduct an adequate inquiry into the circumstances supporting the defense contention that there was good cause to "grant relief from the waiver." R.C.M. 905(e).[1]

Because the majority holds to the contrary, I respectfully dissent.

## I. Background

The troubling facts of this case are not in dispute. While Appellant's court-martial was still ongoing, the defense submitted to the military judge a newly sworn statement made by the company commander who had preferred the charges.

---

[1] Because the charges in this case were referred before January 2019, the citations in this opinion are to the 2016 version of the R.C.M. The 2019 R.C.M., however, are substantially similar, in relevant part.

The company commander said in the statement that: he "did not agree with [some of] the charges" he preferred against Appellant; he believed Appellant "ha[d] not committed" one of the charges he preferred; he was not presented with "any evidence" supporting the charges at the time of preferral; he felt that Appellant was being "dealt with especially harsh[ly]"; he was "amazed that [the court-martial] was happening"; and the only reason he preferred all of the charges was that the trial counsel had led him to believe that he did not have "any other option but [to] prefer charges. If I had an option, I would not have checked Court-Martial for this case." (Internal quotation marks omitted.) In sum, the company commander asserted that he was coerced by the trial counsel into preferring charges. And yet, upon reading this sworn statement by the company commander, the military judge summarily ruled that the defense motion was "untimely" without conducting a meaningful inquiry on the record into the critical issue of whether there was good cause under R.C.M. 905(e) to "grant relief from the waiver."

## II. The Responsibilities of the Military Judge in Addressing Unlawful Command Influence

The case law pertaining to unlawful command influence is similarly not in dispute. During the past three-and-a-half decades, this Court has proclaimed that unlawful command influence is "the mortal enemy of military justice," *United States v. Thomas*, 22 M.J. 388, 393 (C.M.A. 1986), that it can be "devastating" to the military justice system, *United States v. Stoneman*, 57 M.J. 35, 42 (C.A.A.F. 2002) (internal quotation marks omitted) (quoting *United States v. Allen*, 33 M.J. 209, 212 (C.M.A. 1991)), and that it goes to the very heart of the "[]fairness" of court-martial proceedings, *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999). "Indeed," as then-Chief Judge Robinson Everett noted in *Thomas*, "a prime motivation for establishing [our Court] was to erect a further bulwark against impermissible command influence." 22 M.J. at 393.

In addition, our case law firmly establishes that "a primary duty of the military judge in a court-martial is to protect against unlawful command influence." *United States v. Harvey*, 64 M.J. 13, 18 (C.A.A.F. 2006) (citing *Biagase*, 50 M.J. at

152). Moreover, our Court "has repeatedly reaffirmed that the military judge is the 'last sentinel' in the trial process to protect a court-martial from unlawful command influence." *Id.* at 14 (citing *United States v. Gore*, 60 M.J. 178, 186 (C.A.A.F. 2004); *Biagase*, 50 M.J. at 152; *United States v. Rivers*, 49 M.J. 434, 443 (C.A.A.F. 1998)). Accordingly, the question before us is whether the military judge in the instant case fulfilled these essential responsibilities.

Despite the egregious facts brought to the attention of the military judge and despite this clear-cut case law, the majority opinion treats this situation as if it were some tame procedural defect, such as when a functionary misspells a name in a forwarding document. I respectfully disagree. Unlawful command influence is a different beast entirely, "red in tooth and claw."[2]

In viewing flagrant evidence of UCI as a mere procedural defect, the majority opinion relies on the provisions of R.C.M. 905(b)(1), which state that "[d]efenses or objections based on *defects* (other than jurisdictional defects) in the preferral, forwarding, or referral of charges, or in the preliminary hearing" "must be raised before a plea is entered . . . ." (Emphasis added.) However, a "defect" is typically considered to be a mere fault, flaw, shortcoming, or imperfection. *Merriam-Webster's Unabridged Online Dictionary*, https://unabridged.merriam-webster.com/unabridged/defect (last visited Mar. 17, 2022). Unlawful command influence is far more pernicious than that. Moreover, it does not resemble the examples of "nonjurisdictional defects" set forth in the Discussion section applicable to R.C.M. 905(b), which refers to matters such as "unsworn charges, [an] inadequate Article 32 preliminary hearing, and inadequate pretrial advice." R.C.M. 905(b)(1) Discussion. Accordingly, R.C.M. 905(b)(1)'s invocation of the words "defects . . . in the preferral" is a remarkably thin reed upon which to hang the weighty issue of waiver as it pertains to a fundamental subversion of the military justice system.

The majority, in support of their reliance on R.C.M. 905(b)(1), points to the case of *United States v. Hamilton*, 41 M.J. 32 (C.M.A. 1994), stating: "[T]he rule established by

---

[2] Alfred, Lord Tennyson, *In Memoriam A.H.H.* canto 56 (1850).

*Hamilton* and its progeny is that claims of defective preferral based on allegations of unlawful command influence must be raised prior to entry of pleas.*" United States v. Givens*, __ M.J. __, __ (6) (C.A.A.F. 2022).

I respectfully disagree. The *Hamilton* Court did not require UCI motions to be raised before the entry of pleas. In *Hamilton*, this Court stated: "We . . . *hold* that any defects in the preferral or forwarding of charges were waived, since appellant did not raise them *at trial*." 41 M.J. at 37 (emphasis added). Thus, the *holding* in the *Hamilton* case indicates that accusatory UCI must be raised *at trial*, meaning at any time prior to the adjournment of the court-martial.

In that regard, it is noteworthy that just prior to deciding *Hamilton*, this Court held that a claim of unlawful command influence was not waived for purposes of the appeal even though appellant "fail[ed] to raise it at his court-martial" altogether. *United States v. Johnston*, 39 M.J. 242, 243 (C.M.A. 1994).

Further, none of our cases subsequent to *Hamilton* establishes a requirement to present motions alleging accusatory UCI prior to the entry of pleas. On the contrary, the case law following our decision in *Hamilton* did not adopt the position staked out in the passage cited by the majority. In *United States v. Brown*, for example, we held as follows: "Failure to raise the issue of command influence as to the accusatorial process, as in this case *at the trial*, waives the issue." 45 M.J. 389, 399 (C.A.A.F. 1996) (emphasis added). And in *United States v. Richter*, a case where the appellant asserted that his commander was coerced by the legal office into preferring charges, this Court held that "[d]efects in preferring and forwarding charges are waived *if not raised at trial*, unless the failure to raise the issue is itself the result of unlawful command influence." 51 M.J. 213, 224 (C.A.A.F. 1999) (emphasis added). And the sole precedent this Court cited in support of this proposition was none other than *Hamilton*.

The line being drawn in *Brown* and *Richter*—as reflected by the holding in *Hamilton*—that an appellant must raise an accusatory UCI claim before the trial is completed rather than wait to raise the claim for the first time on appeal—re-

flects a concern that "the accused would unfairly benefit because [a] remand [on appeal] may be a number of years after the trial, when the witnesses and victims have moved or their memor[ies] ha[ve] faded." *United States v. Upshaw*, 49 M.J. 111, 114 (C.A.A.F. 1998) (Crawford, J. concurring). Drawing the line any earlier in the adjudicatory process, however, improperly exalts a rigid view of orderliness over the far more important interest of having this Court continue to stand as a "bulwark" as we vindicate each servicemember's right to a court-martial untainted by the stain of unlawful command influence. *Thomas*, 22 M.J. at 393.

For the foregoing reasons, we should view accusatory UCI motions as raising more than mere "defects" under R.C.M 905(b)(1). Instead, we should consider accusatory UCI under the rule that reflects the substance of the motion that was presented by the defense in this case: that is, R.C.M. 907(a), which governs motions to dismiss that are "capable of resolution without trial of the general issue of guilt."

Therefore, based on the text and structure of the R.C.M., the applicable case law of this Court, and the inherent corrupting effect of unlawful command influence, I conclude that a claim of accusatory UCI raised at any time prior to the adjournment of a court-martial must be considered timely. Accordingly, under the facts of this case, Appellant's motion was timely and the military judge was required to adjudicate it.

### III. The Responsibilities of the Military Judge in Addressing Good Cause to Grant Relief from the Waiver under R.C.M. 905(e) in the Context of Accusatory UCI

Even if I were to adopt the majority's view that R.C.M. 905(b)(1) applies here, I would conclude that the military judge abused his discretion by failing to conduct a meaningful inquiry into whether Appellant showed good cause to raise an untimely motion. Specifically, the military judge had the responsibility to consider the motion under R.C.M. 905(e), which provides that "[t]he military judge for good cause shown may grant relief from the waiver" that would otherwise be effected by a failure to timely make the motion.

In the instant case, the defense submitted a motion during trial that requested dismissal of the charges based upon evidence of accusatory UCI, and requested permission to file the motion upon a showing of good cause based on newly discovered evidence. The motion presented the military judge with a startling sworn statement by the company commander in which the company commander stated that he had been coerced into preferring charges against the accused.

The military judge nonetheless summarily rejected the defense motion. After setting forth the time lines that had been established for filing motions and concluding that the motion was "untimely," the military judge merely added the following cursory observations related to the issue of good cause: "[T]he facts upon which the defective preferral and unlawful command influence portions of the motion are based were discoverable by the defense beginning on 23 April 2018, the date of preferral. Good cause does not exist for filing this motion on the eve of trial."

As can be seen, the military judge failed to substantively address the prima facie showing of good cause presented by the defense. This was true despite the fact that the defense counsel, as officers of the court, twice informed the military judge that they had learned of the impropriety in the referral process just days before the trial on the merits was set to begin. Specifically, in an email to the military judge on February 24, 2019, defense counsel sought leave to file an amended motion "for good cause" based on "new evidence discovered on Friday afternoon that relates to the Motion." And defense counsel, during argument on the motion, reiterated the fact that they had only recently been made aware of the unlawful command influence issue. The Government did not address good cause in its argument on the motion, and the military judge did not follow up on the defense's assertion, did not ask any pertinent questions of either side, and did not address good cause in any other way during the hearing on the motion.

Simply put, the defense presented a prima facie showing of good cause by alerting the military judge to their recent discovery of the pertinent information. And the defense had no reason to believe this showing was inadequate—and thus

had no reason to expand on its proffer—because the Government had not refuted this point and the military judge had neither explored the issue nor indicated in any way that the defense had not met its burden.

The military judge denied the motion on the basis that the facts relied on by the defense were "discoverable" since the date of preferral. If that standard were established as a required condition for establishing good cause, it would impose on defense counsel an obligation to engage in discovery throughout an accused's command in order to ascertain whether there had been any impropriety at the accusatory stage of a court-martial, even if the defense had no basis for making such an inquiry.

I also note that on July 13, 2018—more than four months before the entry of pleas—defense counsel specifically asked the Government to disclose any evidence of unlawful command influence, to which the Government responded: "[N]o such evidence is known to exist." Appellant's reliance on that representation was reasonable because all evidence of unlawful command influence concerned the behavior of *government* actors. And as we have held previously, "there [is] good cause [shown] when the government 'sandbag[s]' the defense." *United States v. Jameson*, 65 M.J. 160, 163 (C.A.A.F. 2007) (third alteration in original) (quoting *United States v. Coffin*, 25 M.J. 32, 34 n.3 (C.M.A. 1987)). That is, when defense counsel reasonably rely on representations by the government in deciding to not file a motion, and the government later acts inconsistent with those representations, good cause can exist to "grant relief from the waiver." R.C.M. 905(e); *see Jameson*, 65 M.J. at 163.

Per *Jameson*, the Government may not have it both ways. Appellant's failure to file a timely motion was directly traceable to representations made by the Government, and thus even if the motion should have been filed before pleas, the military judge erred in failing to address this critical evidence as to whether there was good cause to "grant relief from the waiver." R.C.M. 905(e).

The majority opinion suggests that the defense is somehow at fault because the defense had listed the company commander "as a witness for the defense for months by the time

the motion was filed, but for reasons indiscernible from the record, Appellant did not seek to interview him at that time." *Givens*, __ M.J. at __ (10).[3] But two things *are* clear from the record. First, the company commander was listed as a *sentencing* witness, not a witness on motions or on the merits. And second, as noted above, the Government had expressly assured the defense that, with respect to UCI, "[N]o such evidence is known to exist." Under these circumstances, the timing of the defense interview—a factor not mentioned by the military judge—does not justify the military judge's rejection of the defense motion.

## IV. Conclusion

I conclude that the military judge erred by not permitting Appellant to submit an accusatory UCI motion at any time during trial. I further conclude that, even if there is a requirement to submit an accusatory UCI motion prior to pleas under R.C.M. 905(b)(1), the military judge erred in failing to appropriately address Appellant's prima facie showing of good cause under R.C.M. 905(e) to "grant relief from the waiver."

Because the military judge erred by summarily disposing of Appellant's UCI motion as untimely, he did not explore the merits of Appellant's UCI claim. As a result, the record is not sufficiently developed for this Court to decide that issue, to include the potential harmlessness of the military judge's action. Accordingly, I would reverse the judgment of the United States Army Court of Criminal Appeals, remand for consideration of Appellant's UCI claim, and authorize a *DuBay*[4] hearing for further factfinding. Accordingly, I respectfully dissent.

---

[3] The majority places responsibility for the lack of an appellate record on the defense despite the Government specifically denying knowledge of any evidence of UCI and the military judge providing little justification for a sua sponte ruling disregarding prima facie evidence of good cause. It is noteworthy that appellate defense counsel was likely foreclosed from answering why the record is de minimis in this case. *See United States v. Jessie*, 79 M.J. 437, 445 (C.A.A.F. 2020) ("[T]he text of Article 66(c), UCMJ, [10 U.S.C. § 866(c) (2012),] does not permit the CCAs to consider matters that are outside the entire record.").

[4] *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411 (1967).